THE LAKE KOEN NAVIGATION, RESERVOIR AND IRRI-GATION COMPANY v. THE McLAIN LAND AND INVESTMENT COMPANY.

No. 13,625.    (76 Pac. 853.)

SYLLABUS BY THE COURT.

1. EMINENT DOMAIN—*Defective Description of Land in Appeal Bond.* On an appeal from the condemnation of land for the storage of water, made under section 1 of chapter 151, Laws of 1899 (Gen. Stat. 1901, § 3758), the real estate affected should be described in the appeal bond, but a defective description may be rendered certain by an express reference in the bond to the report of the condemnation commissioners.

2. ——— *Damages Not Duplicated—Demurrer to Evidence Properly Overruled.* The record examined and found to disclose that damages for certain items were not duplicated and that the court was warranted in submitting the question of title to the jury.

3. ——— *Measure of Damages—Value Enhanced by Community with Other Tracts.* On an appeal from the condemna-

tion of land it is proper, in proving damages, to consider all the capabilities of the property and its most advantageous uses as it is actually situated and as it is actually related to other land; and if it possess an enhanced value occasioned by its community with other tracts nothing short of such value will afford its owner adequate compensation for its loss.

4. ———— *Rule for Computation of Interest on General Damages.* In condemnation appeals it is the better rule to allow interest on general damages from the date of condemnation, but the amount should be reduced by the value, if any, to the owner of whatever subsequent possession and use of the land he has enjoyed.

Error from Barton district court; ANSEL R. CLARK, judge. Opinion filed May 7, 1904. Reversed.

*Eaton & Loomis*, for plaintiff in error.

*Nimocks & Swartz*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: At its session in 1899 the legislature enacted the following provision for the condemnation of lands for the storage of water:

"Any irrigation, canal or reservoir company, for the purpose of establishing any reservoir, lake or pond for the storage of water, shall have the right to condemn lands in the same manner as is provided for the condemnation of lands for railroad and other purposes." (Laws 1899, ch. 151, § 1; Gen. Stat. 1901, § 3758.)

Under this law the Lake Koen Navigation, Reservoir and Irigation Company condemned a tract of land in that part of Barton county which is known as the "Cheyenne Bottoms," and from the commissioners' award the McLain Land and Investment Company appealed. The appeal was perfected by the filing of a bond, and the case was tried without formal pleadings. In the appeal bond occur the following attempted descriptions: "S. E. acres 160, value twenty-five dol-

lars; . . . S. E. acres 80, value eighty dollars." At the trial proof was offered under these descriptions concerning damages to the southeast quarter. of section 25, township 18, range 13, and to the north half of section 35, township 18, range 13, all in Barton county. The jury found damages in the sum of $320 for the first tract, and in the sum of $500 for the second tract. Objection was made to the evidence, and it is urged here that the appeal bond furnished no basis for such damages, because, it is said, the appeal is taken only from the award for land described in the instrument which effectuates the appeal.

There was an essay at description, showing that tracts of land which had been condemned for twenty-five dollars and eighty dollars, respectively, were embraced in the appeal. The bond described the condemnation proceedings fully, and near its close contained the following statement: "This bond is intended as an appeal from appraisement and condemnation of all lands appraised and condemned in the within-described proceedings." There is no complaint that the land imperfectly described had not been condemned by the commissioners. Here, as in other cases of real-estate description, that is certain which can be rendered certain; hence, the reference to the commissioners' report was sufficient to identify that which was otherwise imperfectly described. That a reference to the proceedings anterior to the bond for the purpose of aiding its recitals is permissible was indicated in the case of *K. C. & S. W. Rld. Co. v. Hurst*, 42 Kan. 462, 22 Pac. 618.

At the trial witnesses were interrogated regarding damages to land taken, and afterward regarding the value of fences taken, and the amount necessary to be expended to reenclose with a fence tracts not taken.

No objection was made to this method of proof. The legal theory that fences are a part of the land was not insisted upon in the course of either the examination or the cross-examination of witnesses. The answers of the witnesses clearly show that they made no such discrimination. The court instructed the jury upon the specific matter and admonished them against the double valuation which would result from first including the value of the fences in that of the land, and then finding the value of fences as a separate item. The jury returned separate damages for land and for fencing. Under these circumstances it must be decided that an assignment of error claiming a duplication of damages in respect to fences is not sustained by the record.

At the conclusion of the appellant's evidence a demurrer to it was interposed on the ground that it had shown no title to the land. It was shown, however, that the McLain Land and Investment Company had been in possession of the land by a tenant for a long period of time, that it granted leases of it and received rent for it year after year, and that it sold and conveyed a portion of it, acting through its president, J. K. McLain. The condemning company conducted portions of its defense apparently upon the assumption of ownership in the appellant, and a witness stated without objection that a plat shown him correctly represented the lines of "the land owned by the McLain people," by whom, it fairly appears, was meant the McLain Land and Investment Company. Therefore, the record contains sufficient to warrant the submission of the question of title to the jury.

The trial court instructed the jury as follows:

"In actions of this kind the owner of the lands is entitled to receive a fair and just compensation for all

22—69 KAN.

damage which he has sustained to his lands, considered as an entire tract, by reason of the condemnation and appropriation of certain parts thereof, as plaintiff-claims has been done in this case, and the determination of the amount of that compensation is the principal question for this jury. . . .

"There is some testimony in this case bearing upon the market values of the lands condemned and appropriated and considered in two ways: (1) By considering the land condemned and appropriated in a body by itself, and unconnected with the other portion of the ranch in question; (2) by considering it as a part of the whole ranch in question. The plaintiff in a case of this kind is entitled to compensation for the damage which he has sustained, and if the market value of the land condemned and appropriated is greater when considered in one of these two ways than in the other, then he is entitled to such fair and reasonable market value of his land as will compensate him for the loss which he has sustained."

These instructions and the testimony given under the second method of proof referred to by the court were opposed by proper objections and exceptions. The land taken comprised 4573 acres, practically in a body, of a stock-ranch containing 8400 acres. The jury found the value of the land appropriated to be $13,740, regarding it as unrelated to the tract from which it was severed, but found such value to be $15,240 when the entire ranch of which it formed a part was considered. The verdict adopted the larger sum as the owner's compensation and judgment was rendered accordingly. The reservoir company claims that the rule adopted contravenes the condemnation statute. This, however, is not apparent.

Section 1360 of the General Statutes of 1901 provides for the appraisement of the portion of any quarter-section or other lot of land taken, and the

assessment of the damages thereto, and section 1364 authorizes an appeal from the award of damages for injury to the land, crops, buildings and other improvements thereon, and for all other injuries sustained.   But neither of these sections, and no other of which the court is aware, undertakes to say what it is that shall make up the value of any particular tract of land which may be appropriated.  Such value depends upon the purpose to which the land is devoted, its specific quality and character, the manner of its use, its contiguity to other land, and many other circumstances as variable as the necessities and the desires of men.  In this case the witnesses declared that a body of land of the peculiar kind and quality of that which was taken was more valuable when used with another body of land of the size and character of that from which it was disunited.  No objection was urged against the competency of the witnesses, and the jury found their testimony to be true.  No claim was made for damage to land not taken.  Probably the unappropriated land suffered no diminution in value from the segregation.  But the method of estimating the value of the land taken was not affected by these facts.  The most advantageous use to which any condemned tract may be put should always be considered.  ( *C. K. & W. Rld. Co. v. Willits,* 45 Kan. 110, 25 Pac. 576 ; *Cohen v. St. L. Ft. S. & W. Rld. Co.,* 34 id. 158, 8 Pac. 138, 55 Am. Rep. 242.)   In the case of *Comm'rs of Smith Co. v. Labore,* 37 Kan. 480, 15 Pac. 577, the syllabus reads :

"Where three quarter-sections of land lying in a body are owned severally by three persons, who, under a written contract between themselves, use the land in common ; and each quarter-section is more valuable by being so used than it would be if used separately ; and a public road is established across

these three quarter-sections, separating the stock water from the pasture land, and thereby rendering the use of the land in a body under the contract less valuable, and thereby lessening the value of each quarter-section, it is *held*, that damages for this loss of value to each quarter-section may be awarded to the owners of the land.''

If, instead of a roadway, one of these quarter-sections of land had been appropriated entire, any enhanced value it might have possessed occasioned by its community with the other tracts, could not have been excluded or ignored in an award of damages. So, in this case, it was proper for the jury to consider all the capabilities of the property and all the uses to which it might be applied as it was actually situated and as it was actually related to other land, and not merely as a separate and independent plat; and, if its value, so considered, be greater than it otherwise would be, nothing short of such value would afford its owner adequate compensation for its loss. Therefore, the evidence complained of was rightfully admitted, and the instructions assailed were rightfully given.

The report of the condemnation commissioners was filed June 4, 1900. The trial occurred August 18, 1902. From the plaintiff's own evidence the jury could have found that during the interim the possession of the owner and its use of the land were disturbed in no important or substantial particular. It continued, as before, to rent the land to a former tenant; the sale of a portion of the land was not impeded, the owner reserving the right to recover its value; the land taken was largely pasture, and no evidence as to contemplated improvements was offered. The rental value of the land and the actual returns of rent to the owner increased. At the time of the con-

demnation the owner was receiving for the use of the whole ranch—the land taken and the land not taken rented as an entirety, and therefore in the most advantageous manner for the land taken—the equivalent of $900 per annum.   At the time of the trial it was receiving $1000 per annum.   Other facts made it a matter of much doubt for the jury to decide whether the owner of the land had been at all seriously disadvantaged pending the appeal, and tended to show that the value of the use of the land during that period must have been a very considerable sum.   The court instructed the jury as follows :

"The jury are instructed that the plaintiff is entitled to recover some amount in this case as its damages, and the plaintiff is also entitled to recover interest upon that amount at the rate of six per cent. per annum from the 2d day of June, 1900, and his actual damages, with interest added thereto, will determine the amount of the damages which is to be found in favor of the plaintiff in your verdict."

The jury allowed the sum of $2073.72 as interest on damages for the time elapsing between the condemnation and the trial of the case, which amount was included in the judgment.   In this the district court erred.

In condemnation appeals the issue is, What shall be full compensation ?   Interest is allowed merely as a means of securing such compensation.   If, upon the condemnation of land, complete deprivation do not follow at once, still, further tenure is rendered precarious.   Possession may be disturbed at any time, and all property rights are exercisable only under doubt and uncertainty as to their duration.   As a recompense for the loss attending this embarrassed use of the land and this qualification of dominion over it pending the payment of the condemnation

money, interest may be allowed. If, however, as a matter of fact the owner should suffer no injury in these respects no occasion for compensation by way of interest would arise. The owner should not have his land and interest too, for the constitution does not contemplate the payment of anything beyond full compensation. It is the better rule, therefore, to allow interest on general damages from the date of condemnation, then reduce the amount by the value, if any, to the owner of whatever subsequent possession and use of the land he has enjoyed. ( 2 Lew. Em. Dom., 2d ed., § 499 ; Rand. Em. Dom. § 280.) The instructions given, to which due exception was taken, gave the jury no opportunity to apply this rule, although the evidence clearly indicated an opportunity for its just and beneficial use.

The judgment of the district court is reversed, and the cause is remanded for a new trial.

All the Justices concurring.