No. 29,805.

WILLIAM J. BURKE, SR., *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

(296 Pac. 380.)

*W. W. Brown, C. E. Pile,* both of Parsons, *E. S. McAnany, M. L. Alden* and *T. M. Van Cleave,* all of Kansas City, for the appellant.

*H. J. Emerson,* of Kansas City, and *Wm. J. Burke, Jr.,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the defendant railroad company from an award and judgment rendered in the district court in a condemnation proceeding, and in addition to the usual question as to the amount of the award the case in the district court had a preliminary matter concerning the validity of the appeal bond filed by the landowner after the report of the appraisement commissioners had been filed, which goes to the question of the jurisdiction of the district court to hear the appeal.

This case involves all the property owned by the appellee in the vicinity of the strip of land condemned. All of his property was taken, and therefore there is no question of damages to other property. Appellee's property consisted of ten lots in an addition to Glen Park, in Wyandotte county, and they were all designated by lot numbers. They were all 25 feet wide; some of them were 100 feet long and others 110 feet long. All of them at the time of the condemnation contained the full dimensions given them in the recorded plat except one lot, where 10 feet at the rear end of it had been disposed of. Three lots were adjoining and were used as one tract, two other lots adjoined each other and were used together, the other five lots were isolated and separate. There were improvements on six of the lots, and they were appraised separately by the commissioners, but reported in connection with the value of the lots on which they were located. The report of the appraisers shows a separate value for each of the ten lots and a separate addition to six of them for the improvements on those six lots. The total appraisement for all ten lots and the improvements was $17,825. The appraisement was made and completed on June 25, 1929.

The owner of these lots filed an appeal bond in the sum of $100 on July 1, 1929, which was on that day approved by the county clerk. It referred to the condemnation proceeding and recites the taking of the lots for railroad purposes, giving the description of

them by number as shown on the recorded plat, and the assessment of compensation on all of them on June 25, 1929, in the total sum or award of $17,825.

The railroad company promptly filed its motion to dismiss the appeal, appearing specially for such purpose only, on the ground that no bond or bonds had been filed, as required by law, and that no appeal from the award or awards had been taken.

The contention of the railroad company was then and is now that the pretended appeal bond was void for uncertainty and indefiniteness, no award being described therein, and that it wholly failed to give the district court as an appellate court any jurisdiction of the proceeding.

The trial court, overruled the motion to dismiss, and this is the first assignment of error on the appeal to this court.

Appellant insists there were at least ten awards and there should have been at least ten separate appeal bonds; that there was a separate award for each lot but no award for the total sum, and that the bond does not describe any definite judgment or award from which the appeal is attempted to be taken, and cites cases where bonds have been held void, or too indefinite to give the appellate court jurisdiction.

R. S. 66-906 provides that appeals by the owners from the awards of commissioners shall be taken in the same manner as appeals are granted from the judgment of the justice of the peace to the district court. R. S. 61-1002 gives the requirements for taking an appeal from a judgment of the justice of the peace to the district court as follows:

"The party appealing shall, within ten days from the rendition of judgment, enter into an undertaking to the adverse party, with at least one good and sufficient surety, to be approved by such justice, in a sum not less than fifty dollars in any case . . ."

Among the cases cited by appellant is *St. L., K. & S. W. Rly. Co. v. Morse*, 50 Kan. 99, 31 Pac. 676, which was a condemnation case just like the one at bar. The appeal bond was signed only by the surety and not by the landowner and did not name any amount whatever, and the court held the bond was absolutely void and not one that could be amended under the statute.

Another authority cited is *Harrison v. McCabe*, 10 Kan. App. 194, 63 Pac. 277, where an appeal bond was tendered to an inferior court

which recited a judgment materially different from the judgment actually rendered, naming an additional party as defendant, and it was held the bond did not sufficiently describe the judgment from which the appeal was to be taken.

Another Kansas case cited is *Shuster v. Overturf*, 42 Kan. 668, 22 Pac. 718, where the justice of the peace approved a bond which referred to a judgment rendered in the case on an entirely different day, and it was held the appeal should have been dismissed because the bond referred to a different judgment.

Two other cases, *C. B. U. P. Rld. Co. v. A., T. & S. F. Rld. Co.*, 28 Kan. 453, and *Meehan v. Barber County*, 108 Kan. 251, 194 Pac. 916, are cited and are helpful in determining the limited rights of a landowner when his property is taken for a public purpose, which is by appeal only with all the conditions prescribed by statute. Cases are cited from other jurisdictions, but upon examination in most of such cases the procedure is somewhat different, which makes some of them inapplicable. Both parties refer to the case of *Larson v. Superior Short Line R. Co.*, 64 Wis. 59, where the facts are identically the same as they are in this case; but in Wisconsin the jurisdiction of the district court in condemnation cases is not obtained by appeal, but the condemnation proceeding is commenced there, and the court said in the opinion, "The parties are already in court before any appeal is taken." So we cannot use the ruling in that or other cases from that state to determine the question of appeal and jurisdiction by virtue of the bond in the case at bar.

It is worthy of mention that in most of the Kansas decisions above cited mention is made of the right and privilege of amending defective appeal bonds and correcting irregularities under our statutes unless the bonds are absolutely void. Among the statutes referred to in these cases in this connection are R. S. 61-1009, R. S. 60-759 and R. S. 60-760.

Appellee cites the case of *Irrigation Co. v. McLain*, 69 Kan. 334, 76 Pac. 853, where there was a defective and incorrect description of the land in the bond, and it was held that the description could be rendered certain by reference in the bond to the report of the commissioners, as follows:

"On an appeal from the condemnation of land for the storage of water, made under section 1 of chapter 151, Laws of 1899 (Gen. Stat. 1901, § 3758), the real estate affected should be described in the appeal bond, but a defective description may be rendered certain by an express reference in the bond to the report of the condemnation commissioners." (Syl. ¶ 1.)

The case of *Wood v. School District,* 102 Kan. 78, 169 Pac. 555, is where a number of landowners appealed from an award in a condemnation matter, all joining in one bond. The trial court sustained the motion to dismiss the appeal on the strength of the Morse case, *supra,* but that ruling was reversed and the case remanded with directions to permit the filing of separate bonds and that the irregular bond that was filed gave the court jurisdiction, the court in the opinion saying:

"Of course, each landowner should have appealed separately and filed a separate bond, which should have followed the statutory requirements; but all the owners joined in the one given, and thus became sureties for one another and bound themselves therein to pay all costs and expense of the appeal should they be adjudged so to do.

"This gave the court sufficient jurisdiction to permit an amendment." (p. 79.)

One of the objections to the bond in question is the amount, only $100, for the appeal from ten awards.

It was held in the case of *C. K. & W. Rld. Co. v. Town-Site Co.,* 42 Kan. 97, 21 Pac. 1112, after quoting section 131 of the justice code, which is R. S. 61-1009:

"Under this section it does not make any difference how defective in form or amount, or how insufficient the surety of the appeal bond may be, it can be changed or renewed, either by the justice or by the district court, if complaint is made. This seems to be absolutely conclusive on the question of jurisdiction. If the bond is insufficient in form or amount, the party against whom the appeal is taken has the right to have it corrected in these particulars, or the appellant may strengthen his appeal bond, to guard against such a motion by the opposite party. In either or any event contemplated by § 131, the district court retains the case, and has the power to hear and determine it, or to dismiss it for noncompliance with an order to file a better bond in form and amount. We see no other solution of this question in view of these statutory enactments." (p. 100. See, also, *Lovitt v. Wellington & Western Rld. Co.,* 26 Kan. 297; *Harder v. Railway Co.,* 74 Kan. 615, 87 Pac. 719; *Parker v. Gibson,* 78 Kan. 90, 96 Pac. 35; and 3 C. J. 1112.)

Unless the appeal bond is absolutely void it does not go to the question of jurisdiction.

"The bond or undertaking must so correctly describe or refer to the judgment, order or decree as to identify it as the one from which the appeal is taken, otherwise it will be insufficient, and the appeal will be dismissed, unless the defect may be and is waived or cured by amendment or the giving of a new bond. The description or reference will not be insufficient because of defects therein, if it is sufficient, in connection with the other parts of the record, to identify the judgment, order or decree." (3 C. J. 1152.)

Appellant insists that this is not one judgment or award from which the appeal is taken. The owner is the one who takes the appeal. It is taken regardless of the land described, especially if he has been awarded damages for land not taken. It is urged the statute R. S. 66-902 specifically designates a lot as a division that must be recognized when it refers to "such quarter section or other lot of land." In *K. C. E. & S. Rld. Co. v. Merrill*, 25 Kan. 421, this clause was construed.

"The limitation of 'lot of land' to a legal subdivision or fractional portion of a quarter section, or a small subdivision of a platted town site, is not the true interpretation of the statute. Such limitation is too restricted. Such definition is too narrow. In the general acceptance of the words, a 'lot of land' is the separate portion belonging to one person." (p. 423.)

In 20 C. J. 1061, under the title of Eminent Domain, it is said the description of the land should be by metes and bounds or by reference to a plat filed sufficient to enable a surveyor to find the land designated, and that "the damages allowed each owner should be stated."

We conclude that there was no error in overruling the motion to dismiss the appeal, that the appeal bond was not void, and that the giving of one bond by the owner to appeal from the total award allowed him for his ten lots in the one proceeding was not in violation of any of the conditions imposed in connection with the taking of such appeals.

After the ruling on the motion to dismiss the appeal the court, at the instance of the defendant, ordered the filing of a petition and answer.

The petition set out at great length all the steps taken in connection with the condemnation proceedings, including the application of the railroad company to vacate some of the streets and alleys adjoining these ten lots, and the action of the city commissioners in vacating the same and laying out a new street in another location at the expense of the railroad company. The petition alleged that at the time the streets and alleys were vacated the appellee was the owner of the ten lots described in the petition and the proceedings, including the portion of the streets and alleys reverting to such owner by virtue of such vacation. The petition contained a description of the lots taken and allegations as to their value.

The answer plead the jurisdictional question as to the invalidity of the appeal bond, that the petition failed to state facts sufficient

to constitute a cause of action, that the allegations as to reversionary rights to portions of the streets and alleys are incompetent, immaterial and prejudicial, and also plead other specific and general denials.

The trial was had with a jury which returned a verdict for the appellee for $29,520.30, and judgment was rendered against the defendant railroad company for that amount with interest from June 25, 1929, from which judgment the appeal is taken.

Appellant alleges error in permitting appellee to include the value of the reversionary land from the vacation of the streets and alleys to the lots, which was not included in the condemnation proceedings nor considered by the commissioners. Such evidence was introduced showing that the streets vacated were 40 feet wide and the alleys 15, of which as much as 27½ feet in some instances would be added to the length of the lots. The court also instructed the jury along this line, permitting the jury to consider this reversionary addition in considering the size and market value of the lots.

It is true that in the original part of the proceedings and, in fact, prior to the filing of the appeal bond nothing appears in this case concerning such vacation or reversion, but attached to the petition is the resolution of the city authorities concerning the vacation and the acceptance of the same by the railroad company which furnishes the dates and shows the different steps taken in effecting the vacation of the streets and alleys. The vacating resolution was adopted by the city commissioners May 2, 1929. It was approved by the mayor and published two days later. The railroad company applied for the appointment of condemnation commissioners in this case May 7, 1929. They were appointed the same day and took oath two days later. They published the required notice and made the condemnation and appraisement June 25, 1929.

Under all the authorities the trial as to the value of the property taken must be as of the day on which the property was condemned, viz., June 25, 1929. The ordinance took effect by its terms upon its publication and acceptance by the railroad company. It was published May 4 and acceptance was filed May 11, so the streets and alleys were vacated about six weeks before the lots were condemned and appraised, and as a matter of law the reversion of the adjoining portion of the streets and alleys was to the then owner of the lots at that time, namely, the appellee in this action, and

the additions or reversionary parts would pass by condemnation under the ordinary lot designation.

"P. was the owner of certain lots in an addition to the city of Topeka, a city of the first class; an ordinance was duly passed by the city council, vacating the street in front of her lots; thereafter, condemnation proceedings were had in behalf of a railroad company for the condemnation of those lots; in such proceedings the lots were described simply by number, etc., and without any addition of boundaries or other description. *Held*, that under section 34, ch. 37, Laws of 1881, if the title to such portion of the vacated street as was situated in front of the lots of P. passed to her, such portion became, as it were, an accretion to the lots, a part or parcel of them, and passed under any conveyance or transfer of the lots, *eo nomine*." (*A. T. & S. F. Rld. Co. v. Patch*, 28 Kan. 470, syl. ¶ 3.)

"Upon the vacation of a street, in a city of the second class, the vacated land reverts to the owners of the adjoining lots in proportion to the frontage of the lots thereon and becomes a part of such lots and passes under a conveyance in which the lots are described as originally platted." (*Rowe v. Bowen*, 113 Kan. 641, syl., 215 Pac. 1022.)

"In March, 1879, the legislature vacated Cedar street in the platted town site of Oxford. In June, 1879, the owner of the lots abutting on the south side of the vacated street conveyed by lot and block numbers. *Held*, the conveyance included the south half of the vacated street." (*Rothwell v. Veail*, 129 Kan. 679, syl. ¶ 2, 284 Pac. 359.)

If the condemnation would pass the title to the reversionary addition as well as the lots as platted, and the appellee owned the lots as well as the additions at the time of the condemnation, it was perfectly right and proper for the jury to consider the value of the lots with their additions as they were on that date. There is no good reason assigned why the railroad should acquire these additional portions of land without compensating some one for them. If the proceedings had gone through without any claim on the part of the owner, as in one of the cases above cited, or if the vacation had taken place after the condemnation, the railroad company would have acquired them without compensation. Appellant relies upon the point that the proceedings were commenced to condemn the lots only and they only were appraised by the commissioners, but this appeal is for the purpose of ascertaining the value of the lots on June 25, 1929. If oil had been discovered on them before the appraisement was made the owner would have had a right to recover for the increased value thereof occurring even after the beginning of the proceeding to condemn. Here they were enlarged approximately 25 per cent in extent after the be-

ginning of the proceeding and before the condemnation. The fact that the commissioners failed to include this extended area is no reason why the district court should likewise fail to consider the entire area. Suppose by misinformation the commissioners had considered the lots as only 20 feet wide instead of 25 feet, no one would contend that the district court on appeal should not consider the value for the full and correct width. This conclusion applies to the errors assigned in the admission of evidence as to the lots extended by these additions and to the giving of instructions concerning such evidence.

Another assignment of error with reference to the introduction of evidence was with regard to the way of expressing or estimating the value of the lots, particularly on the square-foot basis. Some of the witnesses so testified over the objection of the railroad company, others on the front-foot basis, although neither seemed to be in general use in Wyandotte county except the latter on the most important business streets. Others used the acre basis and estimated that the ten lots with the additions would approximate three-fourths of an acre. The market value of the lots was the thing to be determined, and it can be of very little consequence how the witness arrives at his views on the subject which he is asked to express to the jury. We are referred to the statutory recognition of the standard of weights and measures, but the old-fashioned way of determining the height of a horse, being so many hands high, would not render incompetent the evidence of a witness who based his estimate of the value of the horse partly upon that measurement. Two well-informed witnesses might easily give exactly the same value of a lot, one basing it upon square-foot method of calculation and the other on the front-foot method, and still another on the lot itself as a unit. True, the different methods are confusing to the jury, but that will not render the evidence incompetent.

Another criticism of the admission of certain evidence and the giving of instructions thereon was with reference to the value of the land for different purposes. The court apparently followed the rule of permitting the owner to recover the market value of the lots for any and every legitimate use to which they might be applied and for which they were adapted, including that which is most advantageous and valuable, as announced in *Railway Co.*

*v. Roe,* 77 Kan. 224, 94 Pac. 259, and *Railway Co. v. Weidenmann,* 77 Kan. 300, 94 Pac. 146. But appellant objects to the application of such rule to lots having nothing but a surface value and urges that the above rule is only applicable where there may be damages to land not taken, citing the holding in the case of *Dethample v. Irrigation Co.,* 73 Kan. 54, 85 Pac. 544, as giving the correct rule for a case of this kind where all the land of the owner is taken. In the case last cited the entire tract was taken, but it was different from the case at bar in that it had no possibility of any other use than its surface use for farming or grazing purposes. In the opinion it was said:

"There was no evidence that plaintiff's land had, or is ever likely to have, any value other than its surface value. In such cases the basis of the owner's damages is the value of the land condemned." (p. 55.)

In the instant case there was evidence of the use of the lots for residential or industrial purposes and the owner is, under the decisions in the two cases in 77 Kansas Reports, above cited, entitled to the market value for the most advantageous purpose shown by the testimony.

In the case of *Hamilton v. Railway Co.,* 95 Kan. 353, 150 Pac. 832, the court held:

"When the value of land, arising out of condemnation proceedings, is in issue, an instruction which permits the jury to take into consideration 'everything that tends to make the property more valuable or less valuable' is not erroneous." (Syl. ¶ 3.)

The case of *Wood v. School District,* 108 Kan. 1, 193 Pac. 1049, is cited and commented on by both parties. It was a proceeding to condemn land for an additional school site. It did not involve any question of damages to land not taken. The court in the opinion said:

"The one issue brought to the district court was the value of the lands taken. . . .

"The admission of testimony showing that there were valuable deposits of gravel on some of the lands was not error. It has been held that in order to determine the market value of the land taken any legitimate use to which it may be applied, including that which is most advantageous to the owner, may properly be considered. (*Railway Co. v. Weidenmann,* 77 Kan. 300, 94 Pac. 146; *McKnight v. Wichita,* 83 Kan. 7, 109 Pac. 994.)" (pp. 2, 3.)

The witnesses placed a higher value upon the lots for industrial purposes than for residential purposes, and the court by the in-

structions given permitted them to consider it under the rule of that most advantageous to the owner. We find no error in so doing.

Two rather unfortunate matters are urged as errors: one, the admission of evidence of the sale price of other lots in the general vicinity at or near the time of this condemnation; the other, the attitude of the trial court and the comment of the court upon the competency of this and other evidence, including the directions given to counsel as to method of conducting the examination and the interrogating of witnesses by the court at length, all of which, it is urged by appellant, was prejudicial to the rights of the appellant. The evidence as to the sale price of other property was later withdrawn from the jury and the jury was properly instructed to disregard it, but because of the delay in doing so and the extended comment of the court in favor of its competency in the first place, the appellant claims it necessarily influenced the jury to its prejudice. The withdrawal of evidence improperly admitted occurs occasionally and should not be prejudicial with an intelligent jury, and it has seldom been held to cause a reversal. Neither do we think the extended comment of the court at different times was such as to justify a reversal or the discharge of the jury, as was requested by the appellant during the trial, on that account. We are not persuaded that a new trial should be granted.

The judgment is affirmed.