No. 30,099.

D. A. Lee and Anna Lee, *Appellants*, v. The Missouri Pacific Railroad Company, *Appellee*.

(5 P. 2d 1102.)

Opinion filed December 12, 1931.

*Edward T. Riling, John J. Riling,* both of Lawrence, and *Harry M. Tomkins,* of Council Grove, for the appellants.

*W. J. Pirtle,* of Council Grove, *W. P. Waggener, O. P. May* and *J. M. Challiss,* all of Atchison, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment in a condemnation case where plaintiff was dissatisfied with the award made for the appropriation of some of his farming lands for railway purposes.

It appears that in 1929 plaintiff owned two tracts of land of 400 acres each in Morris county. Two or three sets of improvements were on them and the tilled lands were occupied by tenants. Plaintiff used the pasture lands himself. The two tracts cornered with each other, but they could conveniently be operated together, and through an amicable arrangement with the owner of adjacent land a gate was maintained where plaintiff's lands cornered so that stock could be driven through without the roundabout access supplied by public roads.

On September 30, 1929, the defendant railway company made application for the appointment of appraisers to make a valuation of lands of plaintiff (and other lands thereabout) which defendant desired to condemn for the purpose of straightening its main line, improving its grades and creating better railway facilities in that part of Morris county.

The lands of plaintiff which it proposed to appropriate were a 200-foot strip running from northeast to southwest across the north half of section 36, town 16 S., range 7 east, comprising 12.8 acres; and a tract of 39.8 acres in the southeast quarter of the southwest quarter and in the south half of the southeast quarter of section 35, town 16 S., range 9 east.

The right of way of 12.8 acres cut one of plaintiff's pastures in two which necessitated the construction of a cattle pass under the new railroad grade, and damaged one of a number of springs in the pasture. For this land taken and as damages to the remaining tract the railway was required to construct a cattle pass to reconnect the two parts of the pasture, and pay $2,000.

The second tract condemned, amounting to 39.8 acres, was required for other railway facilities as well as for a right of way. A site for a depot, sidetracks and the like was acquired on land immediately adjacent to that of plaintiff on the west, but on this condemned 39.8-acre tract were located a tool house, section house, bunk house, sidetracks, and extensive "borrow pits" to supply soil and gravel for the new railway grades. The commissioner's award for this second tract was $6,360, making a total award of $8,360, which sum was duly deposited with the county treasurer as the statute provides. (R. S. 66-906.)

Plaintiff was dissatisfied with the amount of the condemnation award and appealed to the district court, where the cause was tried before a jury. Evidence at length was introduced touching the value of the lands taken and damages to plaintiff's remaining lands not taken, and concerning the effect on the value of the plaintiff's land not taken by reason of the location of increased railway facilities constructed thereabout, but excluding those actually placed on the new right of way.

The jury returned a verdict for plaintiff in the aggregate sum of $7,604.39, but that amount included an item of $477.49 as interest which the trial court struck from the total because the jury's award was less than the amount allowed by the condemnation commissioners.

Special questions were also answered by the jury. Some of these read:

"1. What do you allow the plaintiff for the 12.8 acres taken from the east farm in section 36? A. $512.

"2. What do you allow the plaintiff for the 39.8 acres taken from the west farm in sections 34 and 35? A. $4,079.50.

"3. What, if anything, do you allow the plaintiffs as damages to that portion of the east farm not taken as right of way? A. (a) Pasture, $2,150.40; (b) waste land, nothing; (c) plow land, nothing.

"4. What, if anything, do you allow the plaintiff as damage to that portion of the west farm outside of the 39.8 acres actually taken? A. (a) pasture, nothing; (b) plow land, $385; (c) waste land, nothing.

"5. If you find that the remaining portion of the land in sections . . . 35 was damaged by reason of taking 39.8 acres along the public road, on the south side thereof, then state what was the character of such damage. A. On account of reducing acreage of tillable land and being more irregular in shape, less salable.

"6. If you find that the east farm in section 36 has been damaged by reason of the taking of 12.8 acres therefrom for right of way, then state what was the character of such damage. A. Pasture divided, cattle not having as free a range, less accessible, less salable.

"7. Has the land of the plaintiff not taken been in any way damaged physically by reason of the location of the right of way? A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"9. How many acres of plaintiff's land do you find were damaged, if at all, outside of the land actually taken? A. (a) East farm, pasture land, 307.2 acres; (b) plow land, none; (c) waste land, none. West farm (a) pasture land, none; (b) plow land, 165 acres; (c) waste land, none."

Judgment was entered accordingly, and plaintiff appeals.

Plaintiff's first complaint relates to the admission of testimony to show that the railway facilities placed on and near plaintiff's remaining land in section 35 were a benefit to it. The trial court's instruction was that in estimating damages to the land not taken by condemnation the jury should take into consideration—

"Any benefits to the west tract that may accrue by reason of taking and using any part of said lands or land adjacent thereto for depot or stock shipping purposes."

The benefits, if it was proper to regard them as such, were the usual transportation facilities supplied by a railway depot, switch tracks, stock pens, loading chutes, well, bunk house, tool house and the like. Part of these facilities were constructed on the 39.8 acres of plaintiff's land and part on land close thereto but actually on

an adjacent tract not owned by plaintiff. To establish error on this evidence and the pertinent instruction of the court, appellant invokes the constitutional provision which reads:

"No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation." (Kan. Const., art. 12, § 4.)

But what is a right of way? In its simplest sense it means a right of passage over another person's ground. In *Challiss v. A. T. & Santa Fe Rld. Co.*, 16 Kan. 117, where condemnation proceedings for a right of way for a railroad were under review, this court said that "right of way" meant "the right of passage through the grounds of others." (See, also, *Danielson v. Woestemeyer*, 131 Kan. 796, 293 Pac. 507.) In the Challiss case, *supra*, it was held that the constitution does not grant the right of eminent domain but restricts it; that eminent domain is a prerogative of the state, over which the legislature has control for the public good. The legislative policy governing its exercise was prescribed in Laws of 1864, ch. 124, amended to some extent in G. S. 1868, ch. 23, § 81, R. S. 66-901. Since the earliest beginning of railway construction in this state the land to be acquired for railway right of way, being the strip of land over which the railroad operates its trains, is limited to "one hundred feet in width, except [where] for the purposes of cuttings and embankments it shall be necessary to take more for the proper construction and security of the road." The same section of statute R. S. 66-901 also authorizes the condemnation of lands for other railroad purposes such as sites for depots, sidetracks, workshops, water stations and materials for construction. In the condemnation proceedings affecting plaintiff's lands in section 35 the 39.8 acres taken were largely for other purposes than to provide a right of way, consequently the constitutional mandate that in making an award for land taken for a railway right of way any benefit to the owner's land not taken is to be left out of account has no application to the situation which arises when lands are condemned by a railroad corporation for other than right-of-way purposes.

This matter has already been the subject of this court's deliberations. In *Smith v. Railway Co.*, 90 Kan. 757, 136 Pac. 253, the constitutional provision under present discussion was considered with reference to the condemnation of certain lands near Hoisington for railroad shops and terminal facilities. This court said:

"The term 'right of way,' as used in this section of the constitution, means the strip of land ordinarily condemned or acquired by railroad companies for the building and maintaining of grades and the ties and rails thereon constituting the railroad track. Section 1800 of the General Statutes of 1909 may be said to be the legislative definition of the term, and is, in substance, a route for a proposed railroad along the line of such proposed railroad, as located by the company, not exceeding one hundred feet in width, except (when) for the purposes of cuttings and embankments, it shall be necessary to take more for the proper construction and security of the road.

"The provision in this section for the condemnation of such other land as may be deemed necessary for sidetracks, depots, workshops, water stations, etc., seems to be a separate provision. . . .

"We conclude, therefore, that lands acquired by eminent domain proceedings for sidetracks, depots, workshops, etc., unless included in the one-hundred-foot strip provided for, are no part of the right of way of the railroad company as that term is used in the constitutional provision. It follows that damages assessed for the condemnation of land for workshops and terminal facilities is to be paid for as lands condemned for mill sites and other semipublic purposes, to wit, the value of the land taken and actual damages to lands not taken, resulting from the taking of the land condemned or the use to be made thereof. For instance, if a part of a building lot in a city or town should be taken in such a way as to leave the portion remaining of no practical value, the value of the lot before being taken may be the proper measure of damage. If, however, as the jury find in this case, land not taken was of greater value after than immediately before the taking of the adjacent portion, no recovery for damages to the land not taken should be allowed. . . . In *Tobie v. Comm'rs of Brown Co.*, 20 Kan. 14, the increased value of lands not taken in a proceeding condemning land for a public highway, being the direct and special result of the laying out of the road, is held to be a proper set-off to reduce the damages of the landowner." (pp. 760, 761.)

In *Roberts v. Comm'rs of Brown Co.*, 21 Kan. 247, it was held:

"Increased value of the land may often be taken into consideration in fixing the amount of the damages sustained by the owner thereof in laying out and establishing roads. But this can be done only where such increased value arises from some direct, special, and proximate cause, such as the draining of the land, or building bridges across streams running through the land, or making some other valuable improvement on or near the land, by means of which the owner will be enabled to enjoy his land with greater advantage. . . ." (Syl. ¶ 2.)

In view of the foregoing it must be held that the evidence was competent and the pertinent instruction was proper. Moreover, the amount of the verdict and the special findings of the jury make it rather clear, we think, that the jury made no allowance for any benefits to plaintiff's remaining lands not taken.

The next error urged is upon the ruling of the court that the corn

crop on the condemned land in the west tract was eliminated from consideration. If the corn crop was still drawing sustenance from the soil it should have been regarded merely as part of the land, like the grass, the trees and the buildings, and the value of the land taken would include the corn crop. On the other hand, if the corn had ceased to draw sustenance from the soil it was personal property and not subject to condemnation proceedings. (*Myers v. Steele*, 98 Kan. 577, 158 Pac. 660.) Here we note that the condemnation award was made on November 4, 1929, by which time, of course, a corn crop in Morris county would have ceased to draw sustenance from the soil. (23 C. J. 156.) If defendant appropriated or wasted a mature corn crop on the condemned land, the remedy of those concerned was for damages sounding in tort, and the trial court properly disregarded it in this proceeding.

Appellant also complains because he was restricted in his showing of damages to his east tract caused by the cuts and fills constructed by the railway in his pasture and because the draining was diverted from its natural flow by the railway grade. The cuts and fills were upon the condemned land. Of course, their construction damaged plaintiff's land, but the jury's award of $512 as damages for the 12.8 acres of pasture land taken, and $2,150.40 as damages to the pasture land not taken, being $2,662.40 as damages in full to plaintiff's east tract, does not reveal that he was seriously handicapped in showing his damages. There was testimony as to the height of the grades and the width and depth of the cuts. Just what more on this point plaintiff desired to prove is not clear. On the motion for a new trial no showing was made to enable this court to determine the significance of whatever additional evidence plaintiff was prepared to offer, consequently no reversible error can be established under this assignment. (R. S. 60-3004; *Hall v. Shaffer*, 131 Kan. 109, 289 Pac. 442.) So far as concerns the matter of faulty drainage, if any such exists, that matter would not be a proper item of consideration in condemnation proceedings. Neither the award by the condemnation commissioners nor by the jury could make alternative allowances —so much if the drainage engineering should be well done, and a larger sum if it should turn out that it was not well done. Under this same assignment plaintiff also complains that the trial court refused instructions which he requested.

However, a careful analysis of the instructions given and refused does not disclose that the trial court omitted any pertinent rule of

law covering the issues requiring the jury's determination. And this leads logically to an examination of plaintiff's fourth assignment of error which is directed to this instruction, which the court did give:

"You are instructed that you should not assess the damages on the basis of what the plaintiff would take for his land or any part thereof, or what you would take and let a railroad go across your lands, but the basis of your determination is the fair market value of such land. This value is to be determined upon the basis of what was the highest and best use *to which the land in question was devoted* and adapted. In determining whether or not the plaintiff has suffered any injury to his land not taken, and in arriving at its fair market value immediately before and immediately after said proceeding, you have a right to take into consideration the size of the plaintiff's farm, the purposes for which it was best suited, whether their land was cut in such a manner as to depreciate its value, and the inconvenience, if any, in the use of said land, caused by the taking of a part thereof for railroad purposes." [Italics ours.]

Appellant's criticism is aimed at the words which we have italicized. It must be admitted that the highest and best use to which the land *was devoted* was not a precise statement of the standard of land values in condemnation proceedings. But we think this technical inaccuracy was cured by the additional words which did set the correct standard of value—the highest and best use to which the land was adapted. (*Irrigation Co. v. McLain*, 69 Kan. 334, 339, 76 Pac. 853; *Railway Co. v. Weidenmann*, 77 Kan. 300, 94 Pac. 146; *Burke v. Missouri-K.-T. Rld. Co.*, 132 Kan. 625, 296 Pac. 380.) Furthermore, it hardly becomes counsel for plaintiff to seize on this technical point when they themselves lapsed into the same sort of technical error. In the requested instruction which they formulated this language appears:

"After having heard the evidence in the case, you will take into consideration the whole situation; just how the farm was divided, just what purposes it was used for, and any purposes for which it might be most profitably used."

"Just what purposes it was used for" is quite as inaccurate as the language of the court to which plaintiff now takes exception. The court holds that the instruction as given was not prejudicially erroneous.

Plaintiff's final assignment of error is based on the order of court whereby the item of $477.49 which the jury had allowed as interest was stricken out. It is gravely contended that plaintiff was entitled to interest on the jury's award notwithstanding the railway

had posted a larger sum for his benefit with the county treasurer in accordance with the report of the condemnation commissioners. Cases are cited which appellant construes to justify his contention in this respect. One of these is *Calkins v. Railroad Co.*, 102 Kan. 835, 172 Pac. 20, but a careful reading of that case shows that interest was only allowed on the compensation awarded by the jury between the condemnation and the rendition of the verdict "less the amount defendant had deposited with the county treasurer." If in the present case the railroad company had deposited the condemnation money and it had then brought the appeal, that would have tied up the money in the hands of the county treasurer so that plaintiff could not get it, and then, of course, plaintiff would have been entitled to interest on the jury's award. That is the point decided in *Gulf Railroad Co. v. Owen*, 8 Kan. 409, syl. ¶ 11. In another case cited by appellant, *Flemming v. Ellsworth County Comm'rs*, 119 Kan. 598, 240 Pac. 591, interest was allowed on the plaintiff's damages for land condemned for a highway for the time of the "delay in payment of compensation," which again reveals no support for appellant's present contention. In *W. & W. Rld. Co. v. Kuhn*, 38 Kan. 104, 16 Pac. 75, the condemnation commissioners awarded Mrs. Kuhn $510 as damages for a railway right of way through her farm. She appealed, and the jury gave her a verdict for $1,593.28. The trial court instructed the jury thus:

"13. If the jury find an amount of damages greater than $510, you will allow 7 per cent interest on the amount awarded from September 7, 1885; if you find the sum not greater than $510, no interest will be allowed." (p. 109.)

Commenting on that instruction, this court said:

"We know of no other way in which the court could have informed the jury upon what basis they were to ascertain and allow interest. This instruction did not inform the jury what the award was, but was a direction to them that in case they found for the plaintiff in a greater sum, that they were also to allow the plaintiff interest at 7 per cent. We cannot conceive of any way in which this could have injured the defendant. Plaintiff was properly entitled to interest at 7 per cent." (p. 109.)

There is a wealth of cases on this general subject, and not all to one effect. (See Annotation—Right to interest in condemnation proceedings; L. R. A. 1916 C, 1109, *et seq.*; 20 C. J. 806, *et seq.*; 10 R. C. L. 163, 164.)

According to our own view, where the railway company promptly paid over the condemnation award in accordance with the statute,

and the appeal was taken by the plaintiff landowner, with the result that the jury allowed him a less amount, he was not entitled to interest.

The record in this case discloses no error and the judgment is affirmed.

HARVEY, J., not participating.