The Honorable Karin Brownlee State Senator, 23rd District 1232 S. Lindenwood Drive Olathe, Kansas 66062
Dear Senator Brownlee:
You inquire regarding the actions of the City of Lawrence in assessing administrative fees against a telecommunication service provider for its use of "dedicated public utility easements." You inquire whether such easements fall within the definition of "public right-of-way" as defined by K.S.A. 2002 Supp. 17-1902(a)(1). If so, the City is precluded from assessing fees beyond those listed in the statute.[1]
K.S.A. 2002 Supp. 17-1902 governs the rights and responsibilities of cities and telecommunication service providers with regard to "public rights-of-way." Telecommunication service providers are guaranteed the right to place their equipment "along, across, upon and under any public right-of-way in this state."[2] Cities cannot impose "unreasonable conditions, requirements or barriers for entry into or use of the public rights-of-way"[3] but can impose certain fees enumerated in the statute for a provider's "use and occupancy" of public rights-of-way.[4] Fees, other than those listed in the statute, cannot be imposed on telecommunication service providers for their use of public rights-of-way.[5]
2002 Senate Bill No. 397 (S.B. 397), which defines "public right-of-way,"[6] was the product of a collaborative effort between municipalities and telecommunication service providers spurred by federal telecommunications legislation.[7] 47 U.S.C. § 253 prohibits state and local governments from enacting regulations that "prohibit or have the effect of prohibiting the ability of [an] entity to provide . . . interstate or intrastate telecommunications service." Federal law does, however, allow cities to manage "the public rights-of-way" and assess fees for such use.[8] Unfortunately, this term is not defined in the federal telecommunications statutes or appellate court decisions interpreting those statutes.
Prior to the enactment of S.B. 397, telecommunication service providers in Kansas supported 2001 Substitute for Senate Bill No. 306 (S.B. 306) which, among other things, defined "public right-of-way" to include utility easements.[9] When cities objected on the basis that the bill interfered with their ability to control public rights-of-way,[10] the Legislature required cities and telecommunication service providers to work together on legislation that would accommodate the interests of both groups.
One of the objectives of the Kansas League of Municipalities (League) and the cities that participated in crafting S.B. 397 was to define "public rights-of-way." Once defined, the bill then established parameters for their use by telecommunication service providers. With the support of the League, various cities and telecommunication service providers, the Legislature enacted S.B. 397 which defines "public right-of-way" as follows:
 "`Public right-of-way' means only the area of real property in which the city has a dedicated or acquired right-of-way interest in the real property. It shall include the area on, below or above the present and future streets, alleys, avenues, roads, highways, parkways or boulevards dedicated or acquired as right-of-way. The term does not include the airwaves above a right-of-way with regard to wireless telecommunications or other nonwire telecommunications or broadcast service, easements obtained by utilities or private easements in platted subdivisions or tracts."[11]
The definition of "public right-of-way" is unfortunate because it employs the very word that is being defined: "`public right-of-way' means . . . right-of-way interest. . . ."
In property law, a right-of-way is simply a person's legal right to pass through property owned by another.[12] It has been described as an easement to pass or cross lands of another; a servitude with the fee interest remaining in the property owner.[13] However, a right-of-way can also be acquired and held by a city in fee simple through the platting/dedication process,[14] condemnation or contract. In short, how a right-of-way is held by a city (i.e. easement or fee simple) is not helpful in determining whether a "dedicated public utility easement" is a "public right-of-way."
The League maintains that "right-of-way" is a term of art that means a public thoroughfare.[15] This interpretation is borne out by the second sentence of the definition that refers to "streets, alleys, avenues, roads, highways, parkways, and boulevards." There are also Kansas appellate court decisions that use the term "right-of-way" to refer to property that is used for public travel.[16]
Sprint's position is that a "dedicated public utility easement" is included in the definition of "public right-of-way" because a utility easement is a property interest that can be dedicated to a city through the platting process in the same way that a developer would dedicate streets and alleys.[17] However, while a city may accept a dedication of a utility easement, this does not mean such easement is a "right-of-way interest." Kansas statutes treat easements and rights-of-way as two distinct creatures with "public rights-of-way" allied with public thoroughfares.[18] In short, while rights-of-way can be easements, not all easements are rights-of-way.
Prior to the 2002 amendment to K.S.A. 17-1902, telecommunication service providers had the right to "set their poles, . . . wires and other fixtures along, upon and across any of the public roads, streets,and waters of this state in such manner as not to incommode the public in the use of such roads, streets, and waters."[19] In City of Shawnee v.A.T. T. Corp.,[20] the Court interpreted K.S.A. 17-1901 and 17-1902 to allow telecommunication service providers to lay their cables only on public rights-of-way — not on publically owned land that is not a public right-of-way. Consequently, while a city may acquire property through the dedication process that is to be used only for public utilities, this acquisition does not transform the property into a right-of-way.
We are also mindful that when the telecommunication service providers, the League, and the cities finally blessed legislation[21] that addressed telecommunication franchises and cities' control of rights-of-way, the definition of "public right-of-way" did not specifically include the reference to utility easements that had appeared in the doomed S.B. 306 definition. Also, as indicated previously, the current definition elaborates on the nature of the "dedicated or acquired right-of-way interest" by indicating that this interest "include(s) the area on, below or above the present and future streets, alleys, avenues, roads, highways, parkways or boulevards dedicated or acquired as right-of-way." Applying the doctrine of maxim expressio unis est exclusioalterius,[22] it is arguable that when the Legislature included those terms, it intended to exclude utility easements dedicated to a city.
In light of the legislative history of K.S.A. 2002 Supp. 17-1902 and the fact that the definition of "public right-of-way" appears to be limited to public thoroughfares, it is our opinion that the definition does not include a public utility easement that has been dedicated by a property owner to a city.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 2002 Supp. 17-1902(o).
[2] K.S.A. 2002 Supp. 17-1902(b).
[3] K.S.A. 2002 Supp. 17-1902(m).
[4] K.S.A. 2002 Supp. 17-1902(n).
[5] K.S.A. 2002 Supp. 17-1902(o).
[6] 2002 S.B. 397, § 2 [codified at K.S.A. 2002 Supp.17-1902(a)(1)].
[7] 47 U.S.C. § 253.
[8] 47 U.S.C. § 253(c).
[9] "`Public right-of-way' means the area on, below, along or above a public roadway, highway, street, public sidewalk, alley, waterway orutility easement in which a city has an interest. The term does not include the airwaves above a right-of-way with regard to wireless telecommunications or other nonwire telecommunications or broadcast service or easements obtained by utilities or private easements in platted subdivisions or tracts." 2001 Substitute for S.B. No. 306, § 3(g) (emphasis added).
[10] Minutes, Senate Commerce Committee, February 16, 2001.
[11] K.S.A. 2002 Supp. 17-1902(a)(1) (emphasis added).
[12] Black's Law Dictionary 1326 (7th Ed. 1999).
[13] Lee v. Missouri Pacific R. Co., 134 Kan. 225 (1931); Spurlingv. Kansas State Park Resources Authority, 6 Kan. App. 2d 803
(1981).
[14] K.S.A. 12-406, 12-406a, 12-752.
[15] July 28, 2003 letter from Kimberly Gulley, Director of Policy Development Communications for the League of Kansas Municipalities.
[16] State v. Deines, 268 Kan. 432 (2000) (road); Holmes v. SprintUnited Telephone of Kansas, 29 Kan. App. 2d 1019 (2001) (alley).
[17] June 30, 2003 letter from Lisa Creighton Hendricks, Senior Attorney for Sprint.
[18] See K.S.A. 12-631v ("[t]he governing body of any city shall have the power to condemn . . . lands for the construction of sewage disposal plants and . . . any easements therein or rights-of-way necessary for the construction . . . of sewers . . ."); K.S.A. 12-512a ("[a]ny city . . . in vacating . . . any street . . . may reserve to the city and public utilities such rights-of-way and easements as in the judgment of the governing body of the city are necessary . . ."); K.S.A. 12-752(f) ("[s]uch [subdivision] regulation shall contain a procedure for issuance of building permits . . . which shall take into account the need for adequate street rights-of-way, easements, improvement of public facilities, and zoning regulations . . ."); K.S.A. 13-2409a ([a]ll water lines located in or on public rights-of-way, roads, streets, lands, oreasements . . . shall be subject to regulation by the governing body of such city"); K.S.A. 68-167 (unlawful for a person to erect within 50 feet of a right-of-way on a federal or state highway a flashing red light unless the light was placed on the "road, street, highway or publicright-of-way"); K.S.A. 12-3201 (city may regulate the planting and removal of shrubbery "upon all streets, alleys, avenues, boulevards andpublic rights-of-way within such city") (emphasis added).
[19] K.S.A. 17-1901; 17-1902; United Telephone Co. of Kansas v. City ofHill City, 258 Kan. 208 (1995). See Holmes v. Sprint United Telephone ofKansas, 29 Kan. App. 2d 1019 (2001).
[20] 910 F. Supp. 1546 (D.Kan. 1995).
[21] 2002 S.B. 397.
[22] State Dept. of Admin. v. Public Employees Relations Board Bd.,257 Kan. 275 (1995) (when legislative intent is in question, the Court can presume that when the Legislature expressly includes specific terms, it intends to exclude any items not expressly included in that specific list).