No. 21,340.

THE CITY OF WILSON, *Appellee*, v. NICHOLAS WEBER and JOHN WEBER, Partners, doing business as WILSON ELECTRIC LIGHT COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. CITIES—*Second and Third Class—Control of Streets, Alleys and Public Grounds.* The act creating the public utilities commission and giving it power to regulate and control public utilites and common carriers did not repeal the statute which expressly gives the mayor and council of cities of the second and third classes the control of the streets, alleys and public grounds of such cities.

2. ELECTRIC LIGHT PLANT—*Franchise Expired—City May Remove Poles and Wires—No Consent of Utilities Commission Required.* Where a franchise previously granted by a city to a public utility for the use of the streets, alleys and public grounds on which to erect an electric lighting plant for the distribution of electric light and power has expired and the city is taking steps to cause the removal of the

poles and wires which had been placed there by the public utility, the consent of the public utilities commission for such removal or for the discontinuance of the service which is no longer authorized under the franchise is not required by law.

Appeal from Ellsworth district court; DALLAS GROVER, judge. Opinion filed July 7, 1917. Affirmed.

*Ira E. Lloyd, N. F. Nourse,* both of Ellsworth, and *E. H. Hogueland,* of Topeka, for the appellants.

*C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The city of Wilson brought this action to enjoin the Wilson Electric Light Company, a partnership composed of Nicholas Weber and John Weber, from the alleged illegal occupation and use of the streets of the city for the distribution of electric light and power. The injunction was granted and the defendants appeal.

In 1901 the city granted a franchise to the defendants, authorizing them to use the streets, alleys and public grounds of the city upon which to erect and place poles and wires for Wilson to the neighboring city of Dorrance and are also furnish the same to the people of the city, for a period of fifteen years. A plant was at once built in the city and in 1914 the defendants constructed a transmission line from the city of Wilson to the neighboring city or Dorrance and are also furnishing the inhabitants of that city with light and power. The franchise granted by the city of Wilson expired on December 27, 1916, and the city, having built a municipal light and power plant, did not renew nor extend the franchise of the defendants. No right to continue the occupancy of the streets and alleys of Wilson by the defendants having been granted, and they having refused to remove their poles, wires and fixtures from the streets and alleys, the present action was brought.

It is contended that their plant was built under a legal franchise, and as they are operating in two cities, their system is under the exclusive jurisdiction of the public utilities commission. They claim that no change can be made, in the serv-

ice or by way of abandonment of service, that has not been authorized by the commission. Wilson is a city of the third class. The mayor and council of cities of that class are authorized to grant franchises for electric lighting systems for a period of not more than twenty years with restrictions which will protect public and private property. (Gen. Stat. 1915, § 862.) The control of the streets, alleys and public grounds of a city of that class is expressly vested in the mayor and council of the city. (Gen. Stat. 1915, § 869.) Other sections provide that before a person, firm or corporation may enter upon the streets of a city to set up a lighting plant or other utility, such person, firm or corporation must first procure the passing of an ordinance by the city giving the right which shall define fully the terms upon which the right is granted, and if such person, firm or corporation shall enter upon the streets, alleys or public grounds of the city without having obtained such right from the mayor and council such person, firm or corporation shall be guilty of a misdemeanor and be subject to a fine. (Gen. Stat. 1915, §§ 870, 871.) Defendants contend that these provisions have been superseded and impliedly repealed by the provisions of the public utilities act; that the two acts are irreconcilable; and that the utilities act, being the later one, must prevail. It provides in effect that the commission shall have full power to supervise and control all public utilities within its jurisdiction, and authority is given the commission to require utilities to furnish proper service and facilities to the public and to establish just and reasonable rates. It further provides that if any rates, rules or practices are found by the commission to be unlawful, unjust, unreasonable or inadequate, other rates, practices and service may be substituted by the commission. (Gen. Stat. 1915, §§ 8337-8347.) Section 20 of the act provides in effect that whenever a common carrier or public utility desires to make a change of rates or of any rule, regulation or practice, such carrier or utility shall file a schedule with the commission showing the changes, and that "no change shall be made in any rate, toll, charge or classification or schedule of charges, joint rates, or in any rule or regulation or practice pertaining to the service or rates of any such public utility or common carrier, without the consent of the

commission," etc. (Gen. Stat. 1915, § 8347.) It is contended that the quoted provision of section 20 supersedes and repeals the provision giving the control of streets to the mayor and council of cities, and that until the commission consents to a vacation of the streets and authorizes a discontinuance of the service under the expired franchise it is continued in force as fully as if a new franchise had been granted by the mayor and council.

The question then is: Did the legislature in the enactment of the public utilities act intend that the control of the streets and the granting of franchises to persons or corporations to operate within the city should be taken from the mayor and council on whom it had been expressly conferred and give it to the public utilities commission?

Nothing in the language of the utilities act indicates such a purpose. That act deals with rates, tolls and charges made by public utilities and common carriers and the service rendered by them to the public, and also the rules, regulations and practices pertaining to the service, giving the commission full power and jurisdiction respecting these matters. It does not profess to deal with the granting or extension of charters, or the granting or renewal of franchises. The commission has the fullest power to regulate the service and rates made and furnished by utilities and public service corporations which have been given a franchise or right to carry on business with a city. It is even authorized by section 31 (Gen. Stat, 1915, § 8359) of the act to inquire into the necessity for an additional public utility or common carrier that may apply for an opportunity to do business in the state; that is, to inquire and determine whether or not the public convenience would be promoted by the transaction of business by such added utility or common carrier. But none of these provisions nor anything contained in the act hints at a legislative purpose to give the commission authority to impose a franchise upon the people of a city, whether willing or unwilling, nor to reanimate a franchise that has expired. It can no more grant or renew a franchise than it can create a corporation or vest a foreign corporation with authority to do business in the state. Once a utility is vested with authority to enter upon the streets, alleys and public grounds of a city, and to exercise the privileges

City of Wilson v. Electric Light Co.

conferred upon it, the commission may regulate the service, prescribe the rates and require the continuance of the service at the prescribed rates.

That was held in *The State, ex rel., v. Postal Telegraph Co.,* 96 Kan. 298, 150 Pac. 544, relied upon by the defendants. The telegraph company had been authorized to do business in the state, and under that authority had established its line through the state, including the city of Syracuse, and upon the claim that the service could not be given, except at a loss, it assumed to discontinue the service; but it was held that the company was subject to the control of the commission in the matter of service and could not discontinue it without the consent of the commission. There the right had been conferred upon the company to do business in the state and through the city of Syracuse, and it had been giving service under that right. Being under the jurisdiction of the commission it could not change or discontinue the service without the permission of the commission. The case involved a matter of service which the telegraph company had undertaken to perform in Kansas and in pursuance of the granted authority. If the company had entered the state without permission, and the attorney-general or the city authorities had taken steps to oust the interloper, it could hardly have set up the defense that it was already in the state giving service to the public, that the control of the service was in the public utilities commission, and that it could not be ousted or interrupted until the commission had given its consent.

The same may be said of *City of Scammon v. Gas Co.,* 98 Kan. 812, 160 Pac. 316, also cited by defendants. In that case the gas company had been granted a franchise to furnish gas to others, and under the grant it had laid pipes and delivered gas to consumers. It ceased to supply the gas as it was required to do under the franchise and its contract, and it was held that the matter of restoring and continuing the service was within the jurisdiction of the public utilities commission. A wholly different controversy would have been presented if the gas company had entered the city without a franchise and the question had arisen whether the mayor and council of the city or the public utilities commission had the control of the streets of Scammon, or whether the commission could revive a franchise that had expired.

The legislature, of course, might have conferred upon the public utilities commission the power to control the streets, alleys and public grounds of cities and to grant franchises to public utilities to operate within cities, but it chose to place these powers in the municipal authorities. The powers which were intrusted to the commission and the scheme of control given to it are wholly inconsistent with the control of cities, or of the streets, alleys and public grounds of cities. The legislature has expressly placed that control in other tribunals and the control of rates, rules, practices and service of utilities, to which a franchise or right has been granted, has been vested in the commission. No express repeal of the statute giving the authority to cities has been discovered and we think none is implied. The line of division between the two controls is distinct and clear and there is no occasion and apparently no disposition for one tribunal to trench upon the duties and powers of the other. This control by the cities is not taken away or affected by any of the statutes to which reference has been made by the defendants.

The judgment of the district court is affirmed.