No. 47,006

City of Kiowa, Barber County, Kansas, *Appellee*, v. Central Telephone & Utilities Corporation, Western Power Division, and Continental Illinois Bank and Trust Company of Chicago, *Appellants*.

(515 P. 2d 795)

Opinion filed November 3, 1973.

*Donald W. Glaves,* of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, Illinois, argued the cause, and *John W. MacGregor,* of MacGregor and MacGregor, of Medicine Lodge, was with him on the brief for the appellants.

*Gordon Penny,* of Chapin and Penny, of Medicine Lodge, argued the cause, and *W. Luke Chapin,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: This appeal arises from proceedings initiated by the city of Kiowa under K. S. A. 12-811 providing for the purchase by a city of any electric utility plant being operated within a city upon expiration of the current franchise.

The defendant Central Telephone & Utilities Corporation appeals the order determining the amount of the purchase price to be paid by the city.

The above statute provides that the purchase price to be paid for the city utility plant shall be established by three commissioners to be appointed by the district court, one of whom shall be an expert engineer. The statute further directs that the commissioners "ascertain the fair cash value of said plant and the appurtenances". Then, if the city elects to pay the award the amount is paid to the clerk of the district court for distribution. Thereupon right, title and possession of said plant and appurtenances vest in the city.

The primary question presented here on appeal is whether the amount of the award should include severance and consequential damages as a result of the purchase such as (1) the cost of rerouting transmission lines around the city, (2) the cost of easements necessary in rerouting lines outside the city, (3) the loss of returns by reason of fixed costs and loss of load and (4) the engineering fees incurred by the company as a result of the city's action.

Although the question presented must be determined by construing the wording in the statute, certain background facts will be helpful in understanding the legal problem involved. Central Telephone & Utilities Corporation (CTU) owns and operates an interconnected system for the generation, transmission and distribution of electrical power in Kansas. The generating capability of its total system is approximately 411,000 kilowatts. The utility owns and operates 2,300 miles of major transmission lines and 199 substations. Its distribution system serves 144 communities. In addition CTU makes sales for resale to 12 rural electric cooperatives and 13 municipalities. The system is interconnected with the lines of four other established electric utilities operating in this area.

Prior to 1928 the city of Kiowa owned and operated its separate electric generating and distributing system within the city. At that time the system was complete and relied on no outside source for its electrical energy except in possible emergencies. The city plant was sold in 1928 to a corporate utility and a franchise was granted to the corporation to furnish electric power for a period of 20 years. A renewal franchise to furnish such power was granted by the city in 1950 and this franchise expired on August 7, 1970. This latter franchise was held by CTU which owns the distribution system in

Kiowa. There is no longer a generating plant in the city of Kiowa. The electric power is furnished by CTU through its system of transmission and distribution lines.

Under an order of the district court the commissioners appointed to set a purchase price determined that the "fair cash value of the plant and the appurtenances" located within the city of Kiowa was $352,000.00. This amount was confirmed by the district court as the purchase price. However, in doing so the district court rejected the claim of CTU for severance and consequential damages. CTU on appeal now seeks a reversal of the order of the district court denying damages and asks for an additional $251,000.00 in consqeuential damages. No question is raised in this appeal as to the $352,000.00 set as the fair cash value of the physical property located within the city.

CTU argues that the proceedings under K. S. A. 12-811 are by their nature and effect a condemnation and partial taking of an entire generating, transmission and distribution system for which just compensation must be paid, including severance and consequential damages.

The city of Kiowa argues there was no condemnation in the usual sense. The statute grants an option to the city to purchase the physical property used as a separate unit within the city at its fair cash value. The statute does not authorize or require the payment of damages as a consequence of any severance of the city system from the entire system owned and operated by CTU.

The few Kansas cases bearing on this question are not too helpful. In *Clay Center v. Light Co.*, 78 Kan. 390, 97 Pac. 377, the statutory authority of a city to grant a franchise to an electric utility was considered by the court but no question was raised as to the amount to be paid for purchase of the plant. However, the case is authority for the rule that both parties to a franchise between a city and an electric utility are bound and must take notice of the laws in effect when a franchise is granted. At page 392 of the opinion it is said:

". . . Both of the parties to this franchise were bound to take notice of the law under which they acted, and must be held to have contracted with reference thereto."

So in the present case when the franchise was received by CTU in 1950 its ownership and maintenance of the utility within the city were subject to the statutory city purchase provisions then in effect.

K. S. A. 12-811 was enacted in its present form in 1941 (L. 1941, ch. 105, § 1) and has remained unchanged since that time.

The second Kansas case bearing on our present question is *City of Wilson v. Electric Light Co.*, 101 Kan. 425, 166 Pac. 512. In that case the question was, what right, if any, does a utility company have after its franchise has expired. It was held the right of the utility to operate within the city terminated on the expiration of the franchise. On expiration of the franchise the city has the right to require the company to remove the electric plant and distribution lines without payment of damages by the city.

So in our present case it would appear when the franchise of CTU expired August 7, 1970, the city had a legal right to force CTU to remove its poles and wires from the city without payment of the expense of removal and without payment of damages. This, however, the city did not elect to do.

The last Kansas case bearing upon our question is *City of Baxter Springs v. Foshay Co.*, 110 Kan. 409, 204 Pac. 678. That case deals with the purchase of a waterworks system located within a city under a predecessor statute similar to the one under discussion. However, that waterworks system was not a part of a larger utility being operated and maintained by the company. The question of severance or consequential damages on a partial taking was not considered.

The appellant, CTU, argues that the state and federal constitutions guarantee that when its private property is condemned for the use of the city it is entitled to "just compensation". Payment of "just compensation" has been interpreted to mean that constitutionally the company is enitled to be placed in as good a position pecuniarily as it would have occupied if its property had not been taken. *Bauman v. Ross*, 167 U. S. 548, 42 L. Ed. 270, 17 S. Ct. 966, and other cases are cited as authority. These cases deal with the right of eminent domain when property is condemned for public use.

There can be little question that if the present property were being condemned under our law governing the exercise of the right of eminent domain by cities (K. S. A. 26-201 *et seq.*) the eminent domain procedure act (K. S. A. 26-501 *et seq.*) would apply and just compensation in such case would include the statutory elements including severance damages in the case of a partial taking. (See K. S. A. 1972 Supp. 26-513.)

However, the right of Kiowa to acquire the present property *is*

not exercised under a right of eminent domain. The right is a contractual right in the nature of a statutory option. The city's statutory right to purchase the property arises only on termination of a franchise contract binding upon the utility and the city. The right to purchase emanates from the statute (K. S. A. 12-811) and must be read into the contract obligations of the parties to the franchise. Therefore the amount of the purchase price of the electric system within the city must be determined by construing the present statute and not by determining the meaning of "fair compensation" under the law of eminent domain.

In construing the purchase statute we note that K. S. A. 12-811 provides for a complete procedure to effect the purchase and sale. The condemnation procedure act is not incorporated in the statute by reference. The right granted to the city is limited by the statute and cannot be exercised until the franchise previously granted to the company has expired or will expire before completion of the proceedings. The amount of the purchase price to be paid is determined by an award set by commissioners appointed by the district court. The commissioners are directed by this statute to ascertain "the fair cash value of said plant and the appurtenances." Damages are not mentioned in the statute. The statute directs that the commissioners shall not take into account the value of the franchise which has terminated or is about to terminate. They are further directed to examine "the plant" and they may rely on the opinion of experts to arrive at the "cost, construction and reproduction cost of such plant," and in another place in the statute they are directed to "arrive at the value thereof". From the wording of the statute we can find no authorization for a city to pay more than the fair cash value of the physical system or plant located within the city.

The problem presented here has been decided in various other states based upon their own particular statutes authorizing the purchase of a utility by a city. We have examined the cases cited by the parties and find no case strictly in point. The statutes of other states which we have examined are unlike ours. The cases cited by appellant can be placed in three groups. The first group includes cases in which the franchises had many years to run at the times of purchase and the acquisitions were under the right of eminent domain. A second group of cases involve statutes which authorize the cities to purchase and the statutes specifically provide for the payment of damages. The third group is governed by

statutory procedures under which cities may bargain and contract to purchase a utility from a corporate utility and in event the purchase price cannot be agreed on they apply to state public utility commissions to arbitrate the amount of the purchase price for the utility system. The public utility commissioners then determine what is "fair compensation" for the property. In these cases "fair compensation" is generally interpreted to include damages.

The case of *Puget Sound Power & Light Co. v. City of Puyallup*, 51 F. 2d 688 (9th CA) falls in the first group. In that case the franchise had 25 years yet to run. The action was strictly a condemnation proceeding based upon the right of eminent domain. Because of the nature of the proceeding it was conceded that "fair compensation" included damages suffered by the owner of the property taken.

The case of *City of Thibodaux v. Louisiana Power & Light Co.*, 225 F. Supp. 657, 373 F. 2d 870 (5th CA), may be placed in the second group. The statute there under consideration authorized a city to "expropriate" an electric plant and specifically provided for payment of the "value of the property plus all damages sustained in consequence of the expropriation." In that case the franchise had 64 years to run when the proceedings were initiated. Appellant cites several cases from California which may be placed in the second category or group. Among these cases is *Southern Calif. Edison Co. v. Railroad Com.*, 6 Cal. 2d 737, 59 P. 2d 808. In that case the court explained the effect of a recent change in their statutes which had authorized the payment of severance damages. Quoting from a prior case (*Oakland v. Pacific Coast Lumber etc. Co.*, 171 Cal. 392, 153 Pac. 705) the California Supreme Court said in the *Southern Calif. Edison Co.* case:

" 'It is quite within the power of the legislature to declare that a damage to that form of property known as business or the good will of a business should be compensated for, but unless the Constitution or the legislature has so declared, it is the universal rule of construction that an injury or inconvenience to business is *damnum abseque injuria* and does not form an element of the compensatory damages to be awarded.' That case was decided in 1915. In 1917 the legislature added section 47 (*b*) to the Public Utilities Act (Stats. 1917, p. 264), providing that 'if the commission finds that severance damages should be paid, the just compensation for such damages shall be found and stated separately'. The deficiency in the law in 1915 was thus supplied in 1917 and the contention of the city is no longer available." (6 Cal. 2d 750.)

The case of *Re Kansas City Power & Light Co.*, 43 P. U. R. 3d 433,

illustrates the cases in the third category or group. The Missouri statutes provided for arbitration of the amount to be paid for the purchase. The amount was arbitrated by the public service commission and it held consequential damages should be included in the purchase price to be paid by the city.

On the other hand the city of Kiowa cites several cases to support the lower court's order. Again the statutes in the states concerned are dissimilar to our statute. The cases do, however, lend support to the lower court's holding in this case. In *Public Service Co. v. City of Lebanon*, 219 Ind. 62, 34 N. E. 2d 20, the utility whose property was purchased had operated under a franchise granted by the city of Lebanon. The franchise had been surrendered and an indeterminate permit accepted by the utility in lieu thereof. Under their statute the permit continued "until such time as the municipality shall exercise its option to purchase, as provided in this act, or until it shall be otherwise terminated according to law." The act provided that by accepting the permit the utility company shall be deemed to consent to the future purchase of its property. In denying a claim for severance or consequential damages it was said in response to a petition for rehearing:

". . . The rule applicable to condemnation of property under the power of eminent domain, in which the value of the property and damage to the remaining property from which it is severed must be paid, does not apply, since, under the statute and the agreement entered into by the appellant when it accepted the indeterminate permit, the local utility property is treated as a unit which may be purchased as a unit and not as a part of some larger unit. . . ." (219 Ind. 73.)

In *Wisconsin P. & L. Co. v. Public Service Comm.*, 219 Wis. 104, 261 N. W. 711, 262 N. W. 257, a similar result was reached by the Wisconsin court. The Wisconsin statute provided that the state public service commission should fix "just compensation to be paid for the taking of a property of such public utility actually used and useful for the convenience of the public." In prior cases the Wisconsin court had denominated an action under the statute as a condemnation proceeding. When faced with the constitutional question of "just compensation", the Wisconsin court held the system being purchased was a separate unit, a local entity, and disallowed severance or consequential damages. In distinguishing former cases which had treated the proceeding as a condemnation matter the court said:

"We perceive no irreconcilable difference between the holdings of the court in the *Appleton Case* [*Appleton Water Works Co. v. Railroad Comm.*, 154 Wis. 121, 142 N. W. 476.] and the *Kaukauna Case, supra* [*Connell v. Kaukauna*, 164 Wis. 471, 159 N. W. 927, 160 N. W. 1035.]. While the *Appleton Case,* points out a particular in which the proceeding is contractual, in that the consent of the owner has bound him to accept the compensation prescribed by the statute, it states that this follows even though the proceeding be considered one of condemnation. The *Kaukauna Case,* while designating the proceeding in the nature of condemnation, recognizes that the rights of the parties are contractual in some respects. It points out that the proceeding lacks the characteristics of a purchase because no bargaining as to price or terms or conditions is permitted, and it comprises elements of condemnation because the taking is for a public purpose, and the property is by the statute transferred entirely free from all liens existing at the time it is taken, and this may not be accomplished by the immediate parties to the transfer, but only through condemnation proceedings. The *Kaukauna Case* does not disavow or repudiate the idea of the *Appleton Case* that the measure of damages in the proceeding before the commission is limited by the statute to the value of the property taken." (219 Wis. p. 116.)

A primary rule for the construction of a statute is to find the legislative intent from its language, and where the language used is plain and unambiguous and also appropriate to the obvious purpose the court should follow the intent as expressed by the words used and is not warranted in looking beyond them in search of some other legislative purpose or extending the meaning beyond the plain terms of the act. (*Alter v. Johnson,* 127 Kan. 443, 273 Pac. 474; *Hand v. Board of Education,* 198 Kan. 460, 426 P. 2d 124; *City of Overland Park v. Nikias,* 209 Kan. 643, 498 P. 2d 56; *Hunter v. Haun,* 210 Kan. 11, 499 P. 2d 1087.) The policy of courts is to uphold legislative intent rather than to defeat it, and if there is any reasonable way to construe legislation as constitutionally valid it will be so construed. (*Sanders v. State Highway Commission,* 211 Kan. 776, 508 P. 2d 981.)

Applying the above rules of statutory construction to the provisions of K. S. A. 12-811 we hold that the meaning of "fair cash value of said plant and the appurtenances" as used throughout the statute does not extend beyond the plain terms of the act. It refers and is limited to the physical property of the system located within the city and appurtenant thereto. It does not permit the inclusion of severance or consequential damages in the award.

Further we hold that the proceedings encompassed by K. S. A. 12-811, providing for the purchase of corporation utility plants upon expiration of a franchise, are not condemnation proceedings subject

to the constitutional restrictions placed on the exercise of the right of eminent domain. The city's statutory right to purchase corporate utility plants under K. S. A. 12-811 arises on the termination of the franchise contract previously entered into between the utility company and the city. The right to purchase the city system in such case emanates from the statute which must be read into the contract obligations of the parties to the franchise contract. The method of arriving at the amount of the purchase price is clearly expressed in the statute and items of consequential damage are not to be included in the purchase price. Constitutional guarantees which attach when private property is condemned for public purposes under the right of eminent domain do not apply to the present determination of the purchase price.

One final matter deserves comment. CTU seeks an allowance of $30,000.00 for engineering fees incurred by the company in retaining Black & Veatch, electrical engineers, to complete a study of the impact of the purchase and sale of the physical property within the city of Kiowa upon the surrounding territory to be served by CTU. This included an inventory and appraisal of the physical property.

The district court in disallowing the item noted that one of the commissioners appointed by the court was an expert engineer, that the firm of Black & Veatch was hired and retained by CTU to assist not only in furnishing the inventory and appraisal but also in assisting the company to arrive at those items it claimed as damages. K. S. A. 12-811 provides that one of the three commissioners be an expert engineer and Keith L. Bennett was appointed by the court in this capacity. Black & Veatch were not retained in this statutory capacity and we believe the disallowance of the $30,000.00 item was proper.

The judgment is affirmed.