UNITED TELEPHONE COMPANY OF KANSAS, *Plaintiff/Appellee/ Cross-Appellant,* v. THE CITY OF HILL CITY, KANSAS, and THE CITY OF BOGUE, KANSAS, *Defendants/Appellants/Cross-Appellees,* and THE BOARD OF COUNTY COMMISSIONERS OF GRAHAM COUNTY, KANSAS, *Defendant.*

(899 P.2d 489)

Opinion filed July 14, 1995.

*William B. Elliott*, of Hill City, argued the cause and was on the brief for appellant/cross-appellee City of Hill City.

*Kenneth Clark*, of Clark, Shelton, & Pratt, P.A., of Hill City, argued the cause, and *Jones & Weller, P.A.*, of Hill City, and *James M. Caplinger*, of Topeka, were with him on the briefs for appellant/cross-appellee City of Bogue.

*Denton C. Roberts*, of Overland Park, argued the cause, and *C. Michael Lennen*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, and *Stephen D. Minnis*, of Overland Park, were with him on the brief for appellee/cross-appellant United Telephone Company of Kansas.

*Robert W. Parnacott*, assistant general counsel, and *Brian J. Moline*, general counsel, were on the brief for *amicus curiae* the Kansas Corporation Commission.

*Michael C. Cavell* and *Michael G. Smith*, of Topeka, were on the brief for *amicus curiae* Southwestern Bell Telephone Company.

The opinion of the court was delivered by

DAVIS, J.: This case involves a dispute between United Telephone Company of Kansas (United), a Kansas public utility telephone company, and two Kansas cities of the third class, Hill City and Bogue. United seeks to improve its residential services within such cities but the cities, dissatisfied with those services, have refused permission for United to enter and place its improvements within their respective cities. Instead, the cities have attempted to contract with another telephone company to produce such services.

The essential facts are not in dispute. The question is one of law and involves the legislative grant of authority to second- and third-class cities of Kansas authorizing the governing body of any such

city to grant a franchise permitting any person, firm, or corporation to, among other things, construct and operate telegraph and telephone lines in the city. See K.S.A. 12-2001 *et seq*. It also deals with the powers of telephone companies "to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters." K.S.A. 17-1901; see K.S.A 17-1902. Moreover, the resolution of the questions raised involves consideration of K.S.A. 66-131 and related statutes concerning the legislative power granted to the Kansas Corporation Commission (KCC) to issue a certificate of convenience and necessity giving a telephone company the authority to transact the business of a telecommunications public utility in this state.

Many of the statutes we deal with in this case were enacted early this century. The cases interpreting these statutes are not of recent origin. The question presented has never been resolved, although the early cases provide some guidance. The issue presented for resolution is: May a telephone company, holding a certificate of necessity and convenience from the KCC, lay equipment within a city of the second or third class for the purpose of providing residential service or improving residential service to citizens of that city without first obtaining a franchise from the city? We answer this question with a qualified no, as is more fully explained in our opinion.

In order to properly understand the facts and issues presented in the case, a brief review of the statutes governing telephone companies and municipal franchises is appropriate. K.S.A. 17-1901 concerns telegraph lines and was enacted in 1868. It states:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters."

K.S.A. 17-1902, enacted in 1907, gives telephone companies the same rights and powers as telegraph companies.

K.S.A. 12-2001, enacted in 1945, addresses the granting of franchises to public utilities by cities. It states that the governing body of any city may grant a franchise permitting any person, firm, or corporation to, among other things, construct and operate telegraph and telephone lines in the city. K.S.A. 12-2001(a)(3). Such franchises may only be for a term not to exceed 20 years and cannot be exclusive. K.S.A. 12-2001(b)(3). K.S.A. 12-849 states that it is unlawful for any firm to enter upon the city streets of a second- or third-class city to provide telephone service without a franchise.

Further, in order to operate within an area of this state, a telephone company must secure a certificate of convenience and necessity from the KCC. K.S.A. 66-131. The KCC is empowered to supervise and control the rates and services of telephone companies in Kansas. See K.S.A. 66-131.

. With this statutory background in mind, we turn now to the facts of this case. We note that the issues presented for resolution are legal questions, and while the parties appear to argue about the facts, the facts essential to the resolution of the issues are undisputed.

United is a corporation organized and existing under the laws of Kansas. It has been issued a certificate of convenience and necessity to transact the business of a telecommunications utility in accordance with the provisions of K.S.A. 66-131 by the KCC. Under its KCC authority, United serves approximately 130,000 Kansas customers in predominantly rural markets through 159 exchanges. Hill City and Bogue, both third-class cities under the laws of Kansas, and other portions of Graham County, are included in United's KCC certificated service territory (Hill City exchange area). At the present time, no other telecommunications public utility is certified by the KCC to provide service in the Hill City exchange area.

Hill City approved a franchise ordinance authorizing United "to operate its telephone system and all business incidental to or connected with the conducting of a telephone business and system in the City of Hill City, Graham County, State of Kansas" on May 24, 1974. The initial franchise ordinance was for a term of 10 years with an automatic 10-year renewal unless either party gave notice to terminate.

Dissatisfied with the telephone service provided by United, Hill City, on August 30, 1993, passed Resolution No. 93-5, terminating United's franchise effective the last day of December 1993, at the expiration of the 20-year franchise period. In a letter to United, Hill City stated that after January 1, United would no longer have authority to use the city's infrastructure to update its lines or complete any modernization.

United has never held a franchise for Bogue; nevertheless, United has provided telephone service to Bogue for at least as many years as United has served Hill City. On December 13, 1993, United sought permission from Bogue to use the city's roads for placement of buried cable as part of United's modernization plan. At a December 13, 1993, meeting, the governing body of Bogue voted that United "should not use the streets and alleys of Bogue for its 'modernization' work." The City Council of Bogue notified United on April 11, 1994, that it had been operating in Bogue without a franchise and instructed United, because of United's inefficient and insufficient telephone service and lack of confidence by the community in the credibility and capability of United, to

"remove your poles, lines and other facilities from the City of Bogue, Kansas, within a reasonable time after all present litigation between the City of Bogue and United Telephone Company is terminated and/or Rural Telephone Service Company is issued a certificate of convenience and necessity to service Bogue . . . and a new telephone system constructed by said service company."

United has undertaken a major project to upgrade its services and facilities in the Hill City exchange area. One component of the project involved replacement of an analog switch with digital technology. The analog to digital switch cutover was accomplished in May 1994 at a cost of approximately $800,000. Installation of the digital switch permitted United to offer new custom calling features such as call forwarding, speed calling, and conference calling to customers in the Hill City exchange area.

The second major component of the project, which was also scheduled for completion in 1994, involved a $1.2 million investment by United to replace and upgrade outside plant facilities. The record indicates that United intends to replace all existing paper-insulated cable with 14,500 feet of buried copper cable in Hill City;

place 6,300 feet of conduit between the central office, the high school, and the business district in Hill City to permit deployment of fiber-optic cable if supported by customer demand; and provide 33 miles of new copper buried facilities and digital pair gain devices to make available one-party service to all existing multiparty customers in the Hill City exchange area, including the 51 multiparty customers in Bogue. Two miles of these new buried copper facilities would be placed in Bogue, with the remaining 31 miles to be placed in rural Graham County. The total cost of the project was estimated to exceed $2 million.

Hill City and Bogue have each adopted ordinances granting a franchise to Rural Telephone Service Company, Inc., (Rural) to provide telephone service for the cities. Rural has not yet obtained the necessary certificate of convenience and necessity from the KCC to conduct its telecommunication business in those cities.

On October 18, 1993, after Hill City had given notice of its termination to United, the KCC opened Docket No. 189,150-U, ordering United "to show cause why the Commission should not investigate its quality of service." A battery of hearings statewide led the KCC to conclude:

"United has not been providing efficient and sufficient service to all its customers . . . . United has failed to meet many of its customer's expectations with regard to quality of service and technology available to its customers. United's own testimony admits it has not met customer's expectations in a timely manner . . . .

". . . With respect to most, if not all, of these problems, it appears that United compares unfavorably with the quality and level of services now provided by other local telephone companies in Kansas, which further exacerbates United's customers' frustrations."

United's modernization plan was submitted for the KCC's review in the above mentioned hearing. Under the plan, United had proposed to upgrade all multiparty customers to a one-party service by the end of 1999 and to provide digital switching in all exchanges by the end of 2001. By order entered May 6, 1994, the KCC directed that United accelerate completion. The KCC ordered that conversion to digital switching technology must be completed by the end of 1997 and the upgrade to a one-party service standard

for all Kansas exchanges must be accomplished by the end of 1998. United renewed its requests to use Hill City's and Bogue's roads for its modernization program. Both cities refused.

Also during this time, Hill City filed a complaint with the KCC seeking a resolution not only relating to United's service problems but also pursuing a KCC order decertifying the Hill City territory. K.S.A. 66-1,192 specifically charges the KCC to proceed with investigation of any complaint "that any service performed or to be performed by such telecommunications public utility for the public is unreasonably inadequate, inefficient, unduly insufficient or cannot be obtained." Upon investigation, the KCC is empowered "to require telecommunications public utilities to make such improvements and do such acts as are or may be required by law to be done by any such telecommunications public utility." K.S.A. 66-1,192(b). In response, the KCC declared it would not attempt to address the franchise issue:

"The Commission is not a party to the franchise agreement between Hill City and United Telephone nor is the Commission the proper forum to determine the validity of an agreement or to require the issuance of such an agreement. United Telephone has, however, brought these very issues to the attention of the Graham County, Kansas District Court in *United Telephone Company of Kansas v. the City of Hill City, Kansas, the City of Bogue, Kansas, and the Board of County Commissioners, Graham County, Kansas*; Case No. 94-C-20 in its petition for mandamus, declaratory, and injunctive relief filed on March 24, 1994. The Commission believes that the district court is the appropriate forum to consider the issues surrounding the franchise agreement."

Both cities subsequently moved to have their complaints dismissed. Bogue's motion was filed immediately prior to scheduled KCC hearings in March 1994. The Hill City motion was filed after the hearings had been conducted. No final order has been issued in the complaint proceedings. The KCC did, however, issue a preliminary order dated March 6, 1994, in which it addressed the interaction between city franchising authority and the KCC's certification authority. Relying upon *City of New Strawn v. Kansas Corporation Commission*, 5 Kan. App. 2d 630, 622 P.2d 149 (1981), the KCC reasoned: "[A] city's decision to cancel a contract, grant, privilege, or franchise, does not mean that the Commission

is required to cancel a certificate, or that the city can in essence evict a telephone company from operation under the terms of its valid certificate." Based on *New Strawn*, the KCC concluded that "[n]either Hill City nor the city of Bogue have authority to order United to cease operations in their respective territories and to stop with the intended modernization capital improvement plans."

On March 24, 1994, United filed this action in mandamus for declaratory and injunctive relief pursuant to K.S.A. 60-801 *et seq.* and K.S.A. 60-901 *et seq.* United asked for a judicial declaration that it is empowered to use the roads, streets, highways, alleys, easements, and rights-of-way of Hill City and Bogue for the placement of its telecommunications facilities. United further sought an order enjoining Hill City and Bogue from taking action that would interfere with United's use of the public property and compelling Hill City and Bogue to issue permits for United to use the roads. Graham County was also a party to the suit as a defendant, although it is not a party on appeal.

On March 28, 1994, United filed a request for a temporary injunction prohibiting Hill City and Bogue from interfering with United's use of the city streets to complete its modernization efforts. United also asked that Hill City and Bogue be ordered to permit United to use the streets.

On April 29, 1994, a hearing was held on United's motion for temporary injunction. The district court determined that United had the ability to use the public roads to string telephone lines but not to install underground cable. The district court further denied the request for a temporary injunction.

On September 12, 1994, the case came before the court for a hearing. United presented testimony concerning its plans for modernization of the lines in Hill City and Bogue. United also presented the deposition of Don Low, Utilities Division Director for the KCC. At the close of the evidence, the district court found that although United did not have a franchise from either Hill City or Bogue, it did have a certificate of convenience and necessity from the KCC to service the Hill City and Bogue area. The court further found that Hill City and Bogue had the authority to enter into franchises with whomever they wished and that it could not compel

them to enter into a franchise with United. However, the court found that United had a statutory right to use the cities' property to string aerial lines but not to install underground cable. The court then ordered United to submit its plans to the cities for review and also issued an order prohibiting Hill City and Bogue from interfering with United's reasonable use of the streets for purposes of putting in aerial cable.

## BOGUE AND HILL CITY APPEAL AND UNITED CROSS-APPEALS

Hill City and Bogue raise numerous issues on appeal. United identifies four issues. The KCC and Southwestern Bell Telephone Company (Southwestern Bell) have filed *amicus curiae* briefs, each identifying three issues of general interest. The central issue in this case is whether United may use the public streets of Hill City and Bogue in order to place cable and wires in accordance with its modernization efforts even though neither Bogue nor Hill City have granted United a franchise to provide them with telephone service and the cities do not want United to be their service provider.

Hill City and Bogue argue that without a franchise, United cannot utilize the city streets and that United should be required to remove its equipment once the telephone system that is to be set up by their new franchisee, Rural, is installed and operative. United, however, argues that K.S.A. 17-1901 and K.S.A. 17-1902 give it the right to enter into city streets without a franchise and that United is required to do so under its certificate of convenience and necessity granted by the KCC.

The basis for the arguments of Hill City and Bogue that United may not use their streets and must remove its equipment is found in *City of Wilson v. Electric Light Co.*, 101 Kan. 425, 166 Pac. 512 (1917). In *City of Wilson*, the city in question had granted a franchise to an electric company. When the company's franchise expired, the city asked the company to remove all of its poles, wires, and fixtures on the city's property. The company refused, and the city brought suit. 101 Kan. at 426.

*City of Wilson* found that the city had the right to require the electric company to remove its installations. 101 Kan. at 430. The court also found that the recently enacted Public Utilities Act did not supersede the power of the city to control its public rights-of-way, noting:

"The legislature, of course, might have conferred upon the public utilities commission the power to control the streets, alleys and public grounds of cities and to grant franchises to public utilities to operate within cities, but it chose to place these powers in the municipal authorities. The powers which were intrusted to the commission and the scheme of control given to it are wholly inconsistent with the control of cities, or of the streets, alleys and public grounds of cities. The legislature has expressly placed that control in other tribunals and the control of rates, rules, practices and services of utilities, to which a franchise or right has been granted, has been vested in the commission. No express repeal of the statute giving the authority to cities has been discovered and we think none is implied." 101 Kan. at 430.

*City of Kiowa v. Central Telephone & Utilities Corporation,* 213 Kan. 169, 515 P.2d 795 (1973), involving a related question, arose from proceedings initiated by the city under K.S.A. 12-811, providing for the purchase by a city of any electric utility plant being operated within the city. The court again faced the issue of whether a city could require an electric company, once its franchise had been terminated, to remove its electric plant and distribution lines. The court affirmed its holding in *City of Wilson* that the right of the utility to operate within the city terminated on the expiration of the franchise. *City of Kiowa* concluded that the city would have had the legal right to force Central Telephone and Utilities Corporation "to remove its poles and wires from the city without payment of the expense of removal and without payment of damages." 213 Kan. at 172.

United recognizes that these cases relied upon by Hill City and Bogue exist but claims that they are inapplicable to this case because they do not deal directly with telephone companies and, more specifically, with the statutory grant to telegraph and telephone companies in K.S.A. 17-1901 and K.S.A. 17-1902 respectively to "set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state." Instead, United claims that these statutes provide a

specific grant of authority for it to use the streets of Hill City and Bogue notwithstanding the fact that it does not have a municipal franchise.

In support of this contention, United cites *Telephone Co. v. Concordia*, 81 Kan. 514, 106 Pac. 35 (1910). In that case, the New Hope Telephone Company (New Hope) applied for a municipal franchise to build telephone lines through the city of Concordia, but the application was arbitrarily refused. 81 Kan. at 515. New Hope then ran its lines into the city in defiance of the city's refusal and commenced to operate a telephone business within the city. 81 Kan. at 515. New Hope argued that, under G.S. 1901, 1342 and G.S. 1901, 1251, 1252, it was authorized to enter the city to run its lines.

This court found that the statutes cited gave telephone companies the unique right to enter cities whether or not the city granted them a franchise. 81 Kan. at 517-18. We construed the Franchise Act and the statutes together and concluded that a city might only reasonably regulate the manner and place of construction of the lines. 81 Kan. at 517-18. It should be noted, however, that although New Hope was attempting to provide telephone service within the city, our opinion extended only to determining New Hope's right to run its wires along the city streets.

United also argues that it is the possessor of a certificate of convenience and necessity to serve the Hill City exchange area and that the terms of that certificate require it to enter the city and modernize its service. United argues that this certificate supersedes any municipal franchise. According to United, telephone service is a matter of statewide concern which should override any municipal interest.

The *amicus curiae* briefs of both the KCC and Southwestern Bell echo United's assertion that telephone service is a matter best left to statewide regulation and, therefore, the KCC's power must be predominant. In support of their assertions, they point to K.S.A. 12-2002, a statute contained in the Franchise Act. K.S.A. 12-2002 states: "This act shall not be construed either to affect the jurisdiction of the corporation commission or to prevent any electric or

gas utility from obtaining a franchise under the terms of K.S.A. 12-824 or any amendments thereto."

According to the KCC and Southwestern Bell, this statute makes clear that municipal franchises cannot affect the jurisdiction of the KCC. However, we note that this statute says nothing about extending the jurisdiction of the KCC into areas traditionally controlled by municipal franchises. Instead, K.S.A. 12-2002 merely provides that a municipal franchise may not encroach upon matters traditionally regulated by the KCC, such as rates that a utility may charge for service.

United asks us to conclude, as a matter of law, that under the provisions of K.S.A. 12-2002, the Franchise Act is made subordinate to the power of telephone companies to lay and maintain their lines under K.S.A. 17-1902 and also subordinate to the power of the KCC to grant certificates of convenience and necessity. The cities ask us to conclude, as a matter of law, that the franchising power found in K.S.A. 12-2001 *et seq.* controls over both the KCC and telephone companies. We, however, view the powers of telephone companies under K.S.A. 17-1901 and K.S.A. 17-1902, municipal franchising authority under K.S.A. 12-2001 *et seq.*, and the power of the KCC to grant certificates of convenience and necessity under K.S.A. 66-131 as three separate and distinct powers that operate together to make up the framework of telecommunications regulation in the State of Kansas.

Under K.S.A. 17-1901 and K.S.A. 17-1902, telephone companies are authorized to build and construct their lines along public rights-of-way in the state. Such a power is necessary in order to maintain intrastate and interstate service. Nothing in the Franchise Act allows municipalities to prevent telephone companies from constructing and maintaining telephone lines upon and across any of the public roads, streets, and waters of this state as long as the company does so in such a manner as not to incommode the public in the use of such roads, streets, and waters. See K.S.A. 17-1901; K.S.A. 17-1902; *Telephone Co v. Concordia*, 81 Kan. at 518.

Providing telephone service to the residents within municipalities is another matter altogether. Through the municipal franchising statutes, the legislature vested the second- and third-class cities

within this state with the power to enter into franchises with companies which would provide for their telecommunications needs. *City of Wilson v. Electric Light Co.*, 101 Kan. at 430. To hold that a telephone company may enter and serve a community without obtaining a franchise to do so, and to maintain service in that community in opposition to the will of the citizens in that community once a franchise to operate within the city has expired, would make the franchise power of the city irrelevant. Instead, the legislature specifically provided for cities to choose the provider of their utility services through the franchise statutes.

However, this power vested in the cities is not absolute. In order to serve a particular area, a telephone company must obtain a certificate of convenience and necessity from the KCC. K.S.A. 66-131. The KCC is vested with discretion in this area to regulate telephone companies in order to maintain a statewide telecommunications system and to provide for efficient and effective service to communities in Kansas. Therefore, any municipal franchisee must still obtain KCC approval to serve its franchised area. The power of a city to grant franchises does not confer upon that city any power to decide whether a telephone company should be granted a certificate of convenience and necessity. See K.S.A. 12-2002 (stating that the Franchise Act does not affect the jurisdiction of the KCC); *City of New Strawn v. Kansas Corporation Commission*, 5 Kan. App. 2d at 635 (holding that the KCC has the power to deny a certificate of convenience and necessity regardless of whether the city has granted a franchise). That power was specifically vested in the KCC by the legislature.

But, just as second- or third-class cities may not dictate who shall be granted certificates of convenience and necessity by the KCC, so also the KCC may not determine which company shall be granted a franchise to operate within the cities. As we stated in *City of Wilson*:

"The commission has the fullest power to regulate the service and rates made and furnished by utilities and public service corporations . . . . It is even authorized by section 31 (Gen. Stat, 1915, § 8359) of the act to inquire into the necessity for an additional public utility or common carrier that may apply for an opportunity to do business in the state; that is, to inquire and determine whether or not the

public convenience would be promoted by the transaction of business by such added utility or common carrier. But none of these provisions nor anything contained in the act hints at a legislative purpose to give the commission authority to impose a franchise upon the people of a city, whether willing or unwilling, nor to reanimate a franchise that has expired . . . . Once a utility is vested with authority to enter upon the streets, alleys and public grounds of a city, and to exercise the privileges conferred upon it, the commission may regulate the service, prescribe the rates and require the continuance of the service at the prescribed rates." 101 Kan. at 428-29.

United, *amicus curiae* Southwestern Bell, and *amicus curiae* KCC would have us distinguish *City of Wilson* because, while it involved a utility, it did not involve a telephone utility. This fact, they claim, is significant because telephone companies are granted rights under K.S.A. 17-1902 which, according to their contention, include the right to enter and lay lines, poles, underground cable, and equipment, not only for the purpose of going through a city but also for the purpose of serving the citizens within the city. They claim this right is superior to the franchising right of a city. In this decision, we have affirmed the right of telephone utilities to enter into cities to install lines, poles, cable, and equipment for the purpose of preserving intrastate and interstate communications. This right may not be frustrated by cities and may be exercised with or without permission from cities. However, if we were to adopt the contention of United that it may serve the residents of the cities without a franchise, we nullify the provisions of K.S.A. 12-2001 *et seq.* granting franchise powers to cities of second and third class in this state. This is not and was not the intent of the legislature.

As a result, an important factor in any proceeding before the KCC involving telephone service to cities of second and third class of this state and questions whether to grant a certificate of convenience and necessity will be whether the company applying for such authority has a franchise to do business within that territory. The express intent of the legislature in enacting the Franchise Act was to vest cities of the second and third class with the power to determine, by franchise ordinance, which company or companies shall serve their communities so long as that decision does not interfere with intrastate and interstate communications.

As can be seen from this analysis, the powers of the cities, telephone companies, and the KCC are supreme within their own areas of regulation. Their powers are "distinct and clear and there is no occasion and apparently no disposition for one tribunal to trench upon the duties and powers of the other." *City of Wilson*, 101 Kan. at 430. Telephone companies are granted the authority to construct and maintain their lines across the public rights-of-way in the state. K.S.A. 17-1901; K.S.A. 17-1902. Cities are granted the authority to determine which telephone company or companies will provide them with service. K.S.A. 12-2001. Finally, the KCC is granted the authority to issue certificates of convenience and necessity allowing telephone companies to do business in certain areas of the state so that the statewide telecommunications system will not be impeded. K.S.A. 66-131. While a telephone company with a certificate of convenience and necessity to serve an area may construct lines through a city, it may not serve that city without a franchise. While a city may grant a franchise to a telephone company, that company must obtain a certificate of convenience and necessity from the KCC. Finally, while the KCC may grant or deny certificates of convenience and necessity based on its powers to regulate the statewide telecommunications system, it may not force a city to grant a franchise to a telephone company.

To hold that United has the right, without a franchise, to expend substantial funds to upgrade a telephone system for service to the residents of Hill City and Bogue, a system calculated to serve those communities well into the future would be to ignore the powers conferred by the legislature on second- and third-class cities to grant by ordinance the power for a company or companies to do business in those cities. United has attempted to obtain a new franchise from both cities and has failed. It is significant that the trial court found that the termination of the Hill City franchise agreement was not unreasonable or arbitrary. While the trial court did not address this same question as to Bogue, the record would support the same conclusion. Thus, both cities have exercised their respective powers in a reasonable manner in refusing to grant United a franchise to serve their respective cities with telephone service.

The trial court also held that United does have the right under statute to use the cities' streets and highways, to plant poles, and to string wire, uninhibited by the cities, subject to reasonable use and restrictions as provided by the cities. Moreover, the court concluded that the denial of a franchise by the cities was not arbitrary and was supported by substantial competent evidence. We affirm the court as to the right of United to use the public rights-of-way to facilitate intrastate and interstate communication. However, the ability to provide service within the cities to the residents is dependent upon a company obtaining a franchise from the cities as well as subject to the power of the KCC to grant certificates of necessity and convenience. This is a factor which must be considered by the KCC in considering the issuance of a certificate of convenience and necessity for telephone service to the citizens of second- and third-class cities.

The trial court also held that K.S.A. 17-1901 and K.S.A. 17-1902 give the plaintiffs the right to plant poles and to run lines but they do not give them the right to bury cable. We find nothing in the two statutes involved which would limit telephone companies' right to bury cable. Perhaps the court was reading the law in a very technical sense in that it authorized poles, peers, abutments, wires, and other fixtures *"along, upon and across"* any of the public roads, streets, and waters of this state and, thus, excluding the right to bury. However, we believe the right to bury cable is clearly contemplated by the grant of authority as long as it shall be accomplished "in such manner as not to incommode the public in the use of such roads, streets and waters." K.S.A. 17-1901. To this extent, we conclude that the court erred, and, in accord with the cross-appeal of United, we reverse this conclusion of the trial court.

The conclusion we reach is consistent with the scant authority in this state interpreting the seemingly conflicting statutes involved in our determination. Our conclusion affirms the powers of all concerned: the telephone companies to continue unimpeded with their responsibility to provide uniform and continuous service throughout the state; the KCC's authority to regulate the industry, including the exclusive power in Kansas to grant public utilities the right to do business under a certificate of convenience and neces-

sity; and the right of cities, and more particularly the residents of those cities, to determine what company or companies shall deliver telecommunication services under a franchise ordinance to its residents. Our decision harmonizes the seemingly conflicting powers conferred on all three bodies by our legislature, operating completely independently but somewhat interdependently in situations where the public good demands it.. If the legislature wishes to change this scheme of operation, it may do so. At present, we note that the statutes we interpret today have been in existence for many years and whatever conflicts that may have existed in the past have never required resolution by this court.

Affirmed in part and reversed in part.

ABBOTT, J., not participating.

ROBERT H. MILLER, C.J. Retired, assigned.