(35 P.3d 928)
No. 86,566

JACK HOLMES, *Appellant,* v. SPRINT UNITED TELEPHONE OF KANSAS and ELIZABETH KILLION d/b/a KILLION COMMUNICATIONS CONSULTANTS, INC., *Appellees.*

Opinion filed November 30, 2001.

*Stephen P. Weir,* of Hein and Weir, Chartered, of Topeka, for appellant.

*A. Bradley Bodamer* and *J. Emmett Logan,* of Morrison & Hecker, L.L.P., of Kansas City, Missouri, for appellee Sprint United Telephone of Kansas.

*Brenda L. Head,* of Davis, Unrein, McCallister, Biggs & Head, L.L.P., of Topeka, for appellee Elizabeth Killion.

Before ELLIOTT, P.J., BEIER, J., and PADDOCK, S.J.

ELLIOTT, J.: In this trespass action, Jack Holmes appeals the summary judgment in favor of Sprint United Telephone of Kansas (Sprint) and Elizabeth Killion.

We affirm.

At some time in the past, Sprint installed aerial cable in the alley adjacent to what is now Holmes' property in the City of Melvern. In 1988, the City passed an ordinance (1988 ordinance) pertaining to the alley in question which included the following language: "That portion of the alley . . . be vacated as provided by law. Land reverting equally back to owners on each side. *The City of Melvern to retain exclusive rights to existing utilities.*"

In 1996, the City passed another ordinance (1996 ordinance) granting Sprint the following franchise:

"[Sprint is] hereby granted the right . . . to construct, install, maintain, and repair all the necessary poles, wires, cables, pole and wire fixtures, telephone plant, and telephone apparatus of whatsoever nature . . . to erect, maintain, and repair such telephone poles and string the same with wire and cable along, upon, across or below the streets . . . and other public places of the City of Melvern; and to construct, lay, maintain, and repair such cable as [the City of Melvern] . . . may require, under those streets . . . and other public places . . . ."

From September 1999 till January 2000, agents of Sprint dug a trench in Holmes' property along the vacated alley to bury the aerial line. Holmes claims Sprint entered his property—without legal authority—to bury cables, and in doing so also removed foliage and damaged his property. The trial court granted Sprint's motion for summary judgment.

The propriety of granting summary judgment is as stated in *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999). This case involves the interpretation of statutes and written documents over which we have unlimited review. *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998); *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The trial court was correct in determining Sprint had a legal right to enter Holmes' property. First, *United Tel. Co. of Kansas v. City of Hill City*, 258 Kan. 208, 220, 899 P.2d 489 (1995), held K.S.A. 17-1901 and K.S.A. 17-1902 authorize telephone companies "to build and construct their lines along public rights-of-way in the state." K.S.A. 17-1901 states:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and

other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such roads, streets and waters."

The rules applicable to telegraph companies are also applicable to telephone companies. K.S.A. 17-1902.

K.S.A. 17-1901 justifies Sprint's presence in the alley in 1979, and its continued presence is justified despite the vacation of the alley by the two city ordinances. The 1988 ordinance retained to the city the "exclusive rights to existing utilities." The 1996 ordinance assigned the right retained by the 1988 ordinance to Sprint.

Holmes' reliance on K.S.A. 12-2001(b)(1) is misplaced. That statute does require the granting of a franchise to be done by ordinance, and the record on appeal contains no such ordinance in the 1979 era. But the 1996 ordinance was worded as a franchise allowing Sprint "to continue to conduct the business," clearly implying Sprint had authority for what it had done in the past.

Further, the facts of *United Telephone* show it is not unprecedented for a telephone company to operate in a city without a formal franchise. 258 Kan. at 213. *United Telephone* is a complex opinion which balances the interests of the Kansas Corporation Commission, municipalities, and utility providers. 258 Kan. at 223. *United Telephone* cannot be read to hold Sprint lacked any legal authority to install aerial cables in 1979. We conclude Sprint had a valid right to install the aerial lines in 1979.

Since Sprint derived its rights through the city's "ownership" of the alley, the reservation in the 1988 ordinance preserved Sprint's rights.

Holmes interprets the reservation in the 1988 ordinance as not including whatever right Sprint may have had at that time to maintain its telephone lines in the city, relying on K.S.A. 2000 Supp. 12-505 which requires an order vacating an alley to reserve the rights for utility facilities "then in existence and use."

K.S.A. 2000 Supp. 12-505 does not support Holmes' argument. First, the statute merely provides what an ordinance vacating public property must reserve; there is no directive in the statute preventing a city from reserving more.

Second, Holmes fails to demonstrate Sprint's use does not fall within the "then in existence and use" language. On the contrary, Sprint's telephone lines and poles fall precisely within the definition of "then in existence and use."

In effect, K.S.A. 17-1901 was incorporated into the language of "easement or public reservation then in existence and use" in the 1988 ordinance. By the 1988 ordinance, the city reserved any easement held by authority of K.S.A. 17-1901; that reservation surely included Sprint's rights.

Holmes also argues Sprint, at most, had a legal right only to maintain what already existed on the property and, therefore, Sprint exceeded that right when it buried the cable, creating a surcharge.

Generally, the use of an easement must be consistent with the purpose of the easement at the time of its creation, and the use must also be reasonable. See *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 529, 455 P.2d 496 (1969). The *United Telephone* court specifically held K.S.A. 17-1901 and K.S.A. 17-1902 permit telephone companies to bury cable: "We find nothing in the two statutes involved which would limit telephone companies' right to bury cable." 258 Kan. at 224.

The question becomes how to interpret "existing utilities" as used in the 1988 ordinance. Did the 1988 ordinance mean "existing utilities" to refer only to infrastructures already in place, or does the phrase refer generally to existing rights, in this case rights found in K.S.A. 17-1901. Common sense requires us to interpret "existing utilities" to include the rights, not just the physical infrastructure already in place. At the time of the 1988 ordinance, Sprint already had the right to bury cable in the alley pursuant to K.S.A. 17-1901 and K.S.A. 17-1902, as would be later interpreted by the Supreme Court in *United Telephone*.

Sprint did not create a surcharge because burying cable is a reasonable use of the easement created by statute.

Affirmed.